A01A1649. O'CONNELL v. CORA BETT THOMAS REALTY, INC.
(563 SE2d 167)

RUFFIN, Judge.

Malcolm O'Connell leased the basement and first floor of an historic building in Savannah.[1] Three days after O'Connell signed the lease, he was seriously injured when a portion of the ceiling collapsed, pinning him under the rubble. O'Connell sued Cora Bett Thomas Realty, Inc. (CBT), the management company, for negligence and breach of contract.[2] CBT moved for summary judgment, which the trial court granted. As the trial court ruled correctly, we affirm.

On appeal from a grant of summary judgment, we conduct a de novo review, and we view the evidence and the inferences drawn from it in the light most favorable to the nonmoving party.[3] A defendant demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case.[4] The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence.[5] If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.[6]

Viewed in this light, the record establishes that on July 30, 1997, O'Connell signed a five-year lease with the property owner, Historic Investments of the South, Inc., for the commercial space, which was located in the basement and first floor of a three-story building. Although the lease designated CBT as the building's property manager, CBT did not sign the lease.

---

[1] O'Connell signed the lease on behalf of a limited partnership, M. W. O'Connell, Ltd.
[2] O'Connell also sued Historic Investments of the South, Inc., the landlord, which is not a party to this appeal.
[3] See *Jackson v. Ford*, 252 Ga. App. 304 (1) (555 SE2d 143) (2001).
[4] See *Traicoff v. Withers*, 247 Ga. App. 428 (544 SE2d 177) (2000).
[5] See id.
[6] See id.

The lease provided, in pertinent part, that the landlord and manager were responsible for "keep[ing] in good repair and maintain[ing] all structural components of the leased premises including foundation, roof and walls, including keeping same water tight." The tenant, on the other hand, was responsible for "repair[ing] and maintain[ing] at its expense all interior, nonstructural portions of the building." The lease further provided that the tenant had examined the property and agreed to accept it "as is," with the following proviso: "[w]ithin 30 days after this lease agreement is signed . . . Landlord and Manager agree . . . [t]o repair leaking roof and gutters to make property water tight, to keep roof from leaking into Tenant's space, and to maintain [the] water integrity of the repaired roof."

The record demonstrates that all parties were aware that the roof leaked. Prior to signing the lease, O'Connell inspected the premises six times. During his inspections, O'Connell saw that, whenever it rained, water leaked all the way from the ceiling to the first floor and basement. O'Connell also noticed that a portion of the ceiling had either fallen in or been removed, exposing the joists. According to O'Connell, the ceiling consisted of three layers — the original ceiling of plaster and lath, a layer of gypsum board, and a layer of tongue and groove. O'Connell intended to renovate the space and contemplated removing the ceiling to fully expose the truss beams.

Although O'Connell signed the lease on July 30, his first rent payment was not due until December 1, 1997. The landlord agreed to the rent-free period to give O'Connell time to renovate the premises. On August 2, 1997 — three days after signing the lease — O'Connell was cleaning the interior of the building when the ceiling collapsed, breaking his neck.

O'Connell sued CBT, alleging that the company's negligence in inspecting, maintaining, and/or repairing the premises caused his injury. O'Connell also alleged that CBT was liable for breach of contract based upon its failure to repair the premises, as required by the lease.

CBT moved for summary judgment. In its order, the trial court noted that " 'in Georgia, an agent who undertakes complete control and responsibility for management of a property owes the same duty as the owner would owe to third parties for injuries resulting from the agent's negligence.' "[7] The trial court then noted that there was no evidence regarding the degree of control CBT exercised over the property. Thus, the trial court concluded that CBT could not be held liable for negligently causing O'Connell's injury. With respect to

---

[7] Quoting from *Total Equity Mgmt. Corp. v. Demps*, 191 Ga. App. 21, 22 (1) (381 SE2d 51) (1989).

O'Connell's breach of contract claim, the trial court concluded that, under the terms of the contract, O'Connell assumed responsibility for repair, which precluded recovery. Accordingly, the trial court granted CBT's motion for summary judgment, and this appeal ensued.

1. In O'Connell's first enumeration of error, he contends that the trial court erred in granting summary judgment because issues of fact remain regarding whether CBT had a duty to inspect the damage caused by the leaking roof. O'Connell cites several cases in which this Court held that an issue of fact existed regarding a *landlord's* duty to inspect premises after the landlord received notice that the premises were in disrepair.[8] What O'Connell fails to address, however, is that CBT, as the management company, could not be held liable to the same degree as a landlord absent competent evidence of record that CBT assumed total control over the premises.[9]

In his reply brief, O'Connell argues that we should leave the issue of whether CBT assumed total control to the jury. We disagree with this argument for two reasons. First, the record belies O'Connell's contention that CBT assumed total control over the property. It instead shows that CBT would report the need for structural repairs to the landlord, but that the landlord remained responsible for ensuring that repairs were made. Second, after a defendant pierces a plaintiff's pleadings, this Court does not simply assume a jury issue exists. To do so would completely undermine the summary judgment framework. The rule remains that, when a defendant pierces the plaintiff's allegations, it is incumbent upon the plaintiff to point to some evidence of record that creates an issue of fact.[10] In its motion for summary judgment, CBT asserted that, under the contract, any duty owed to O'Connell was owed by the landlord rather than by CBT. Such assertion eviscerates O'Connell's negligence claim against CBT.[11]

Thus, absent some evidence that CBT owed O'Connell a duty, O'Connell's claim of error must fail. In reviewing O'Connell's complaint, the only duty to which he alludes is a general duty to inspect and repair the property — which is owed by the landlord.[12] In responding to CBT's motion for summary judgment, O'Connell

---

[8] Specifically, O'Connell cites *Ween v. Saul*, 88 Ga. App. 299, 302-303 (76 SE2d 525) (1953); *Garner v. LaMarr*, 88 Ga. App. 364, 365 (2) (76 SE2d 721) (1953); *Canfield v. Howard*, 109 Ga. App. 566 (2), (3) (136 SE2d 431) (1964); and *Amberley Suite Hotel v. Soto*, 214 Ga. App. 72 (1) (446 SE2d 778) (1994).

[9] See *Ramey v. Pritchett*, 90 Ga. App. 745, 751 (3) (34 SE2d 305) (1954).

[10] See *Traicoff*, supra.

[11] See *Cope v. Enterprise Rent-A-Car*, 250 Ga. App. 648, 649 (551 SE2d 841) (2001) (essential element of negligence claim is duty to protect others against unreasonable risk of harm).

[12] See OCGA § 44-7-14.

argued that the management company owed him a duty, suggesting that CBT assumed total control over the property. As discussed above, however, this suggestion is belied by the record. Under these circumstances, O'Connell did not carry his burden of demonstrating that an issue of fact remains, and the trial court did not err in granting CBT's motion for summary judgment.

2. In a separate enumeration of error, O'Connell contends that the trial court erred in concluding that the terms of the lease agreement exculpated CBT from a claim of negligence. We find no error.

Initially, we note that O'Connell's argument is unclear. Although O'Connell asserts that the contract should not bar his *negligence* claim against CBT, his negligence claim fails for the reasons set forth in Division 1. He also seems to argue that CBT was bound by the lease to repair the premises. As CBT noted in its motion for summary judgment, however, it cannot be held liable for breaching a contract that it did not sign.

To establish a claim for breach of contract, O'Connell must prove mutual assent *by all of the parties* to the contract.[13] Because the lease is for a term in excess of one year, it falls within the statute of frauds, which requires that the contract "be in writing and *signed by the party to be charged therewith* or some person lawfully authorized by him."[14] Here, it is undisputed that no one from CBT signed the lease. It follows that CBT was not a party to the contract. As a stranger to the contract, CBT may not be held liable for its breach.[15]

Although the trial court did not base its ruling on this argument, a "grant of summary judgment will be affirmed if it is right for any reason."[16] Here, the trial court clearly rejected O'Connell's breach of contract claim. As such rejection was nonetheless right, we affirm.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MARCH 19, 2002.

*Bouhan, Williams & Levy, Walter C. Hartridge, David B. Dennison,* for appellant.

*Hunter, Maclean, Exley & Dunn, Christopher W. Phillips,* for appellee.

---

[13] See *Broughton v. Johnson*, 247 Ga. App. 819 (1) (545 SE2d 370) (2001).

[14] (Emphasis supplied.) OCGA § 13-5-30 (5). See also *Digby's, Inc. v. Emory Univ.*, 227 Ga. App. 176, 177-178 (2) (489 SE2d 81) (1997).

[15] Cf. *Mansour Properties v. Reinhardt College*, 252 Ga. App. 214, 216 (1) (555 SE2d 877) (2001) (stranger to contract accrues no rights thereunder).

[16] *Dover v. City of Jackson*, 246 Ga. App. 524, 526 (1) (541 SE2d 92) (2000).