## A03A1937. O'CONNELL v. HISTORIC INVESTMENTS OF THE SOUTH, INC.
### (593 SE2d 731)

MIKELL, Judge.

This is the second appearance of this case before this Court. As we explained in *O'Connell v. Cora Bett Thomas Realty*, 254 Ga. App. 311 (563 SE2d 167) (2002) (*"O'Connell I"*), Malcolm O'Connell leased the basement and first floor of an historic building in Savannah. Several days after O'Connell signed the lease, he was seriously injured when the ceiling collapsed, pinning him under the rubble. Id. O'Connell sued Cora Bett Thomas Realty, Inc. ("Cora Bett"), the

---

management company, and Historic Investments of the South, Inc. ("Historic Investments"), the landlord and property owner, to recover damages for his injuries. In *O'Connell I*, we affirmed the trial court's order granting Cora Bett's motion for summary judgment. Id. Historic Investments subsequently moved for summary judgment, and the trial court granted the motion. O'Connell appeals, and we reverse.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [the] plaintiff's case. . . . Our review of an appeal from summary judgment is de novo.

(Citations omitted.) *Vasquez v. Smith*, 259 Ga. App. 79 (576 SE2d 59) (2003).

The facts recited in *O'Connell I* will be recounted here only to the extent necessary to dispose of this case. Viewed in the light most favorable to O'Connell, the evidence establishes that on July 30, 1997, O'Connell, on behalf of M. W. O'Connell, Ltd., entered into a five-year lease with Historic Investments for the commercial space, which was located in the basement and first floor of a three-story building.[1] *O'Connell I*, supra at 311.

Pursuant to the lease, the landlord and manager agreed "to keep in good repair and maintain all structural components of the leased premises including foundation, roof and walls, including keeping same water tight." The tenant, on the other hand, agreed "to repair and maintain at its expense all interior, nonstructural portions of the building." O'Connell accepted the premises "as is" with the following condition: "[w]ithin 30 days after this lease agreement is signed . . . Landlord and Manager agree . . . [t]o repair leaking roof and gutters to make property water tight, to keep roof from leaking into Tenant's space, and to maintain [the] water integrity of the repaired roof." Finally, the lease provided that the "Landlord shall not be liable in damages to the Tenant herein, his agents, employees, invitees, licen-

---

[1] Even though O'Connell signed the lease on July 30, his first rent payment was not due until December 1, 1997. Historic Investments agreed to this rent-free period in order to give O'Connell time to renovate the premises. *O'Connell I*, supra at 312.

sees or any other person in or about said premises, unless such damage is due to the negligence of said Landlord."

The record reflects that all parties were aware that the roof leaked. Prior to executing the lease, O'Connell had inspected the premises six times and noticed that whenever it rained, water leaked all the way to the first floor and basement. O'Connell also noticed that a portion of the ceiling had either fallen in or been removed. O'Connell planned to renovate the space and contemplated removing the ceiling to fully expose the truss beams. On August 2, 1997 — just days after signing the lease — O'Connell was cleaning the interior of the premises when the ceiling collapsed on him, breaking his neck. *O'Connell I*, supra at 312.

In response to Historic Investments' motion for summary judgment, O'Connell filed an expert affidavit. O'Connell's expert opined that,

> in the three to four years prior to August 2, 1997, rainwater leaking from the roof of this building came down through the third floor area, becoming considerably more disbursed as it fell over a larger area of the second floor, filtering into a larger area of the first floor ceiling, eventually saturating said ceiling. As a result of this ongoing problem with the leaking roof, the nails which were in place to hold one level of ceiling into the next and which actually protruded into the bottoms of the ceiling joists, rusted from the water saturation. Finally, the ceiling under the weight of the extensive water saturation fell and collapsed on top of Mr. O'Connell. Therefore, it is my professional opinion that the collapse of the ceiling was the direct causal consequence of the roof leaking over a period of time. . . . [H]ad this ceiling been properly inspected . . . , then the danger of the ceiling collapsing from having been saturated by water would have been discovered, and as a result, the collapsing of this ceiling could have been avoided.

In its order, the trial court noted that, "[w]ithout question and recognized by courts involved in this case, [O'Connell] had equal knowledge of the leaking roof, a patent defect, at the time of the signing of the lease. More specifically, . . . the lease place[d] responsibility of repairs for nonstructural portions upon [O'Connell]." The trial court further noted that, "[p]retermitting the expert affidavit regarding the avoidability of the circumstances, [O'Connell] mutually entered into a lease signed by the parties to be charged therewith contracting away the landlord's common law duty [to inspect and keep the premises safe]." The trial court found that the ceiling was

nonstructural, and that because the premises were rented for commercial purposes, and not as a dwelling place, the provisions of the lease control. Accordingly, the trial court concluded that because O'Connell was responsible for nonstructural portions of the premises, Historic Investments was entitled to summary judgment. We disagree.

1. In O'Connell's first enumeration of error, he contends that the trial court erred in its determination that, as a matter of law, responsibility for the collapse of the ceiling had been contractually delegated to him. We agree.

OCGA § 44-7-2 provides that

> [i]n any . . . lease . . . for the use or rental of real property as a dwelling place, a landlord or a tenant may not waive, assign, transfer, or otherwise avoid any of the rights, duties, or remedies contained in . . . (1) [OCGA §] 44-7-13, relating to the duties of a landlord as to repairs and improvements; [and] (2) [OCGA §] 44-7-14, relating to the liability of a landlord for failure to repair. . . .

OCGA § 44-7-2 (b). However, "a landlord may contract to avoid these statutory requirements when renting property which is not to be used as a dwelling-place." (Citation, punctuation and emphasis omitted.) *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 654 (445 SE2d 771) (1994).

In this case, Historic Investments and O'Connell agreed that O'Connell would repair and maintain all interior, nonstructural portions of the building. However, the lease did not absolve Historic Investments of responsibility for its own negligence. Regardless of the fact that O'Connell accepted the premises "as is," and pretermitting whether the ceiling was structural or nonstructural, it is up to a jury to determine whether the collapse of the ceiling resulted from Historic Investments' negligence.

2. In O'Connell's second enumeration of error, he contends that the trial court erred in implying that summary judgment was proper because Historic Investments and O'Connell had equal knowledge of the leaking roof. In its order, the trial court noted that the leaking roof was a patent defect.

"A landlord is not liable for injuries resulting from [obvious or] patent defects existing at the time of the lease of which the tenant has equal means of knowledge unless the contract stipulates to the contrary." (Citation omitted.) *Maxwell Bros. of Athens, Inc. v. Deupree Co.*, 129 Ga. App. 254, 256 (2) (199 SE2d 403) (1973). See also *Commerce Properties v. Linthicum*, 209 Ga. App. 853, 854 (2) (434 SE2d 769) (1993) (" '[t]he true ground of liability is the landowner's supe-

rior knowledge of the perilous condition and the danger therefrom to persons coming upon the property. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted' "). "A latent defect is one which could not have been discovered by inspection. A patent defect is a defect which could be discovered by inspection." (Citation, punctuation and emphasis omitted.) *Hyde v. Bryant,* 114 Ga. App. 535, 536 (151 SE2d 925) (1966).

In *O'Connell I,* we noted that, "[t]he record demonstrates that all parties were aware that the roof leaked." Id. at 312. Although the leaking roof was a patent defect, the dangerous condition of the ceiling was not. See, e.g., *Canfield v. Howard,* 109 Ga. App. 566 (3) (136 SE 431) (1964); *Simon v. Simmons,* 36 Ga. App. 518, 519 (6) (137 SE 282) (1927).[2] Further, the fact that O'Connell noticed that a portion of the ceiling had either fallen in or been removed would not put him on notice that the rest of the ceiling would collapse. Because a jury must decide whether Historic Investments knew or should have known about the dangerous condition of the ceiling, the trial court erred in granting summary judgment.

*Judgment reversed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JANUARY 23, 2004.

*Bouhan, Williams & Levy, Walter C. Hartridge, David B. Dennison,* for appellant.

*Crim & Bassler, Harry W. Bassler, William J. Mueller,* for appellee.

---

[2] Historic Investments argues that *Canfield* does not apply to this case because the lease in that case involved a residential dwelling, and the landlord was contractually obligated to repair the defective condition. Though we recognize these differences, the facts of *Canfield* are otherwise instructive. In *Canfield,* the plaintiff/tenant sued the defendant/landlord to recover damages for injuries sustained when the ceiling of the rented premises fell on her. The plaintiff had observed a leak in the roof and ceiling of the porch, and notified the defendant/landlord, who did nothing. We affirmed the trial court's finding that it was for a jury to decide whose negligence constituted the proximate cause of the plaintiff's injury. *Canfield,* supra at 566.