A05A0198. SOTOMAYOR et al. v. TAMA I, LLC et al.
(617 SE2d 606)

MIKELL, Judge.

Juan and Araceli Sotomayor filed a wrongful death action against TAMA I, LLC, and Perennial Properties, Inc. (collectively referred to as "the landlord"), the owner and manager of the apartment complex where they reside, alleging that the landlord negligently failed to prevent the death of their five-year-old daughter, Leslie, who was struck and killed by a car driven onto the property by Maria de Lourdes Suarez. Suarez drove across marked parking spaces, over a raised concrete curb, four feet of sidewalk, and thirteen feet of grass before striking Leslie and crushing her against the brick wall of her apartment building. Suarez immediately fled the scene and has not been apprehended. She was named as a defendant but was never served. The Sotomayors assert that the landlord was negligent by failing to install a higher curb, called a "barrier curb" or "bumper stop" instead of the lower, mountable curb over which Suarez drove, in front of the parking spaces adjacent to the sidewalk.[1] The landlord

---

[27] (Punctuation and footnote omitted.) *In the Interest of M. T. C.*, 267 Ga. App. 160, 162 (598 SE2d 879) (2004).

[1] Plaintiffs' expert, Herman Hill, testified that a bumper stop is a six-foot section of barrier curb that is six inches in height, while a curb which rises less than six inches above the road is called a "mountable," or "roll" curb.

moved for summary judgment. The trial court granted the motion, holding that there was no competent evidence that the landlord had a duty to install bumper stops; that Leslie's death was unforeseeable because it was caused by the intervening criminal act of Suarez; and that the equal knowledge rule barred the Sotomayors' recovery.[2] The Sotomayors appeal, and we affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).[3]

Viewed most favorably to the Sotomayors, the evidence shows that on October 23, 2000, at approximately 5:30 p.m., Araceli Soto-mayor was watching her three young children play in the grassy area adjacent to her apartment building. Araceli deposed that it was still light outside. She noticed a car coming very slowly across the bridge leading into the complex. Araceli estimated the speed at approximately five mph. The car turned into the parking area. As the car came closer, Araceli recognized it as the one her husband had sold to Suarez one month earlier. The next thing she knew, the car was pinning Leslie against the wall. By the time the ambulance arrived, the child was dead.

Araceli testified that Leslie had been standing three feet away from the wall of the building. According to Araceli's deposition and the police report, it appeared that Suarez was going to park her car, but

---

[2] The Sotomayors do not argue that the trial court erred in holding the equal knowledge rule barred their claim, and we do not address that aspect of the court's ruling.

[3] (Punctuation omitted.) *Carlock v. Kmart Corp.*, 227 Ga. App. 356 (489 SE2d 99) (1997), citing *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

she did not slow down or stop. She continued onto the sidewalk, crossed the grassy area, struck Leslie, "clipped" her younger brother, and, finally, hit the wall.

Aaron B. Goldman, an owner of Perennial Properties and TAMA I, testified that when TAMA purchased the 30-year-old complex in 1997, there were bumper stops at between five and ten percent of the parking spaces. In June 1998, Goldman decided to install additional bumper stops to protect the landscaping because residents were parking haphazardly on the grass. Goldman was concerned with making the property more attractive to prospective tenants, so the new bumper stops were concentrated in the parking area around the leasing office. Goldman testified that the devices were not installed to prevent collisions between pedestrians and vehicles.

In support of their negligence claim, the Sotomayors retained an expert in traffic engineering and accident reconstruction, Herman Hill. In his deposition, Hill opined that the landlord was required to install bumper stops in front of the apartment building and that a bumper stop either would have stopped Suarez's vehicle, a low-riding Honda Accord, or would have slowed it down to the extent that the children would have had the opportunity to disperse. Hill based his opinions on "the reasonable person standard" and on the "standard of practice or the reasonableness of design and operation based on the principles of separating conflicts between vehicles and pedestrians . . . that is covered by state and national standards." Specifically, Hill relied upon a manual entitled "Geometric Design of Highways and Streets," which is issued by the American Association of State Highway and Transportation Officials ("AASHTO"). However, Hill deposed that there were no state, federal, or local laws or ordinances mandating the use of bumper stops. Specifically, he testified that he was unaware of any regulation in Georgia requiring the application of AASHTO standards to parking lot construction. However, he testified that the same principles of separating conflicts between vehicles and pedestrians on residential streets apply to parking lots as well.

On appeal, the Sotomayors argue that the trial court erred in granting summary judgment because their expert's testimony created genuine issues of fact as to whether the landlord had a duty to install bumper stops in front of their building, whether the landlord breached that duty, and whether the incident was reasonably foreseeable. In addition, they contend that Suarez's conduct was a concurrent cause, not an intervening cause, of the child's death.

1. "[W]here the owner has retained control over common areas of an apartment complex to which tenants and others are allowed access, the owner is liable under OCGA § 51-3-1 to exercise ordinary

care in keeping those common areas safe."[4] In their first enumerated error, the Sotomayors argue that Herman Hill's testimony created an issue of fact as to whether the landlord had a duty to install bumper stops. This argument fails because Hill deposed that there were no state, federal, or local laws or ordinances mandating the use of bumper stops. There is no evidence that such devices were required by any housing code.[5] Moreover, the AASHTO manual upon which he relied does not specifically reference the construction of residential parking lots; rather, as its title suggests, the manual is intended to provide guidance in the construction of highways and streets. In addition, the manual states that "barrier curbs are not adequate to prevent a vehicle from leaving the roadway." According to the manual, "the barrier curb *has limited capacity as a shield for pedestrians*, but acts to discourage the mingling of vehicular and pedestrian traffic." Accordingly, Hill's opinion testimony that the landlord was required to install bumper stops in front of the plaintiffs' apartment building is not supported by probative evidence and amounts to bolstering, particularly with regard to his opinion as to what measures would be reasonable.

> [T]he scope of what is admissible as expert opinion testimony is not unlimited. It is the established rule in Georgia, that where (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony. A party may not bolster his case as to the ultimate issue with expert testimony when the jury could reach the same conclusion independently of the opinion of others.[6]

It follows that the trial court did not err in determining that the expert's testimony did not raise a genuine issue of material fact as to whether the landlord had a duty to install bumper stops.

The Sotomayors additionally argue that even if the landlord had no duty to install bumper stops in front of their building at the time it acquired the complex, the landlord assumed this duty when it

---

[4] (Citation omitted.) *Lidster v. Jones*, 176 Ga. App. 392, 393 (336 SE2d 287) (1985).

[5] See *Roth v. Wu*, 199 Ga. App. 665, 666 (1) (405 SE2d 741) (1991) (landlord may not avoid duties created by statute or housing code).

[6] (Citation and punctuation omitted.) *Carlock*, supra at 361 (3) (b) (motion in limine to exclude expert testimony). See generally *Horney v. Panter*, 204 Ga. App. 474, 478 (4) (420 SE2d 8) (1992) ("a party resisting summary judgment, in addition to coming forward with evidence which is sufficient to create a genuine issue of material fact, must present some credible warrant for its admissibility") (citations and punctuation omitted).

installed the devices in front of the leasing office. This argument fails because there is no evidence that the landlord was aware that the devices should have been installed for the protection of pedestrians. "The true ground of liability is the landowner's superior knowledge of the perilous condition and the danger therefrom to persons coming upon the property. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted."[7] The only evidence on this issue was Goldman's testimony that the devices were installed to prevent tenants from parking on landscaped areas. There is no evidence that anyone had driven a car into the wall of an apartment building at the complex.

2. Duty cannot be divorced from foreseeability, and there is no evidence to support the Sotomayors' argument that their child's death was reasonably foreseeable.

> An event is not regarded as being foreseeable if it is one in the nature of an extraordinary coincidence, or a conjunction of circumstances, or which would not occur save under exceptional circumstances; if it is unusual and unlikely to happen, or if it is a rare event in experience, or if other and contingent experiences preponderate largely in causing the injurious effect.[8]

Said in a different way, "[o]ne is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable."[9]

The remote probability of the incident that killed this child is best illustrated by the testimony of the Sotomayors and their expert, as well by reference to precedents involving other rare occurrences. Juan testified that when he moved into the complex a few months prior to this incident, he noticed there were no bumper stops by the parking spaces in front of his building, but he did not mention it to the landlord because he "never imagined what was going to happen." Araceli testified that when she saw the car approach the lot, she thought Suarez was going to park her car; it can be inferred from her

---

[7] (Citation and punctuation omitted.) *Commerce Properties v. Linthicum*, 209 Ga. App. 853, 854 (2) (434 SE2d 769) (1993). See also *Traicoff v. Withers*, 247 Ga. App. 428, 430 (544 SE2d 177) (2000) ("a landlord's liability is predicated upon superior knowledge of the existence of a condition that would subject a tenant to an unreasonable risk of harm") (footnote omitted).

[8] (Citations omitted.) *Standard Oil Co. v. Harris*, 120 Ga. App. 768, 774 (5) (172 SE2d 344) (1969).

[9] (Citations omitted.) *Feldman v. Whipkey's Drug Shop*, 121 Ga. App. 580, 581 (2) (174 SE2d 474) (1970).

testimony that it never occurred to her that Suarez would continue onto the grass and strike her children. The expert, Hill, deposed that the distance between the brick wall of the apartment building and the edge of the sidewalk closest to the wall is sixteen feet, and he prepared a diagram showing that the sidewalk is four feet wide. The evidence thus showed that the distance between the parking space and the wall was 20 feet. Araceli testified that Leslie was standing three feet away from the wall. Therefore, according to Hill's calculations and Araceli's testimony, Suarez's car traveled a distance of 17 feet past the parking lot before hitting and killing the child. It was not reasonably foreseeable that a person would drive her vehicle over a concrete curb, a sidewalk, and strike children playing on the grass 17 feet away.

A case on point is *Feldman v. Whipkey's Drug Shop*.[10] There, the plaintiff was using a telephone booth on the sidewalk adjacent to the front of the defendant's drug store when a vehicle jumped the sidewalk and crashed into the booth, seriously injuring her. She alleged that the defendant was negligent in failing to install a guard rail between the sidewalk and the parking apron.[11] We affirmed the trial court's dismissal of her action for the reason that a car suddenly jumping the curb and sidewalk and crushing the plaintiff against the brick wall was not reasonably foreseeable.[12]

Similarly, in *Eckerd-Walton, Inc. v. Adams*,[13] the plaintiff was sitting on a counter stool at the defendant's drug store when a vehicle crashed through the plate glass window fronting the store and pinned her against the counter.[14] To reach the plaintiff, the car crossed over a five-inch curb, six feet of sidewalk, a nearly eight-inch high brick foundation wall and through the plate glass window.[15] The counter was located six feet inside the store. The plaintiff contended that Eckerd should have erected a barricade so as to make the incident physically impossible. The jury returned a verdict for the plaintiff, and we held that the trial court should have granted Eckerd's motion for a directed verdict because the defendant "did nothing which proximately caused the plaintiff to be injured" and could not be held liable for such a "remote and improbable" act that could "not reasonably . . . be anticipated by a merchant in the exercise of ordinary care."[16]

---

[10] Id.

[11] Id. at 580-581 (1).

[12] Id. at 581 (1), (2).

[13] 126 Ga. App. 210 (190 SE2d 490) (1972).

[14] Id. at 211.

[15] Id. at 212 (2).

[16] (Emphasis omitted.) Id. at 213 (2).

The incidents that caused the plaintiffs' injuries in the two drug store cases were extraordinarily rare events. The same is true of the incident in the case at bar.

Cases relied on by the plaintiffs do not warrant a different result. In *Chatmon v. Church's Fried Chicken*,[17] the plaintiff was injured by an automobile which jumped the curb and struck him from the rear while he was standing in front of an outside ordering window. The area was configured such that the parking spaces were immediately adjacent to the concrete pad on which customers were required to stand.[18] There was evidence that the curb was not of normal height, but was only three to four inches above the parking area and there were no "guard stops."[19] We held that a three-inch curb "is undoubtedly less than half as safe from the danger of overshooting as a 6-inch curb," and that reasonable minds might differ as to whether the injury should have been anticipated and protection barriers installed.[20] Accordingly, we reversed the grant of summary judgment to the defendant. The complete absence of a buffer zone between the ordering window and the parking area distinguishes *Chatmon* from the case at bar.

Similarly, in *Church's Fried Chicken v. Lewis*,[21] the plaintiff was standing at Church's outside ordering window when a car suddenly lurched forward and pinned him to the wall of the restaurant, breaking his legs.[22] An employee had directed the plaintiff to use the outside window, requiring him to stand on a concrete pad that was 66 inches away from the adjacent parking area.[23] An expert testified that the standard for curbing along walkways in front of buildings where cars park was six inches and that the curbing at issue was four inches high.[24] In addition, Church's had installed six-inch high "precast concrete stop blocks" on the side of the restaurant but not at the front of the restaurant where patrons were required to stand when using the outside ordering window.[25] Under those circumstances, we held that the case was properly submitted to the jury. The proximity of the parking lot to the ordering window and the probative expert testimony concerning the curbing distinguish *Lewis* from the

---

[17] 133 Ga. App. 326 (211 SE2d 2) (1974).
[18] Id. at 327.
[19] Id.
[20] Id. at 327-328.
[21] 150 Ga. App. 154 (256 SE2d 916) (1979).
[22] Id.
[23] Id.
[24] Id. at 155 (1).
[25] (Punctuation omitted.) Id.

instant case. Here, the expert relied on highway design standards, and his testimony based thereon was not probative.

3. Finally, the Sotomayors argue that Suarez's conduct was a concurrent proximate cause, and not an intervening cause, of the child's death. We do not reach the issue of proximate causation because the landlord was not negligent. Courts should not venture into the metaphysical thicket of proximate cause until and unless negligence and cause-in-fact have been established.[26]

*Judgment affirmed. Andrews, P. J., concurs. Phipps, J., concurs in judgment only.*

DECIDED JULY 12, 2005 — 

*Taylor & Viers, Richard T. Taylor*, for appellants.
*Swift, Currie, McGhee & Hiers, Lynn M. Roberson, Jamie P. Woodard*, for appellees.

---

[26] See generally C. Mikell, "Jury Instructions and Proximate Cause: An Uncertain Trumpet in Georgia," 27 Ga. State Bar J. 60 (1990).