A10A0515. JOHNSON et al. v. GREEN GROWTH 1, LLC.
(699 SE2d 109)

BERNES, Judge.

Two-year-old Tarmaine Boyd, Jr., was struck and killed by an automobile while playing in the parking lot behind his parents' apartment. His parents brought this premises liability case for the wrongful death of their son against Green Growth 1, LLC, the owner

---

of the apartment complex. They alleged that Green Growth had failed to exercise ordinary care in keeping the parking lot safe by not erecting a buffer zone between the area where children usually played and the vehicular traffic on the premises. The trial court granted summary judgment to Green Growth on the ground that it did not have superior knowledge of any defective condition on the premises that would trigger a legal duty. For the reasons discussed below, we affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of a trial court's grant of summary judgment is de novo. *Steed v. Fed. Nat. Mtg. Corp.*, 301 Ga. App. 801, 802 (689 SE2d 843) (2009).

Viewed in this manner, the record showed that Boyd's parents leased an apartment from Green Growth. Behind the apartment was a parking lot used by the tenants and guests of the five adjoining apartment homes. Children, including Boyd, who was two years old, routinely played in the parking lot.

The back of the parking lot was adjoined by a church. When Boyd's parents first moved into the apartment, a fence and gate at the rear of the parking lot separated the lot from the church. Approximately one year later, construction work began at the church, and construction workers removed the fence and gate. For several months thereafter, construction workers regularly used the parking lot as a cut-through to gain access to the church's property.

On the evening of August 17, 2007, the construction crew was working late, unbeknownst to Boyd's parents, and Boyd was playing with other children in the parking lot. Boyd was being watched by a teenager sitting on a nearby back porch. Tragically, Boyd was struck and killed by an automobile driven by a member of the construction crew.

YALE LAW LIBRARY

Boyd's parents brought this wrongful death action against the automobile driver, the construction company, and Green Growth. The parents alleged that Green Growth "breached its duty of ordinary care as owed to the child as a member of a tenant's family, through failing to separate the children's play area (which doubled as the parking lot) from traffic on its premises." Green Growth moved for summary judgment on several grounds, including that it did not owe a legal duty to Boyd because it lacked superior knowledge of the alleged hazardous condition on the premises. The trial court agreed and granted summary judgment to Green Growth, leading to this appeal.

"The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993). If the defendant does not owe the plaintiff a legal duty, a negligence action cannot be maintained. *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 118 (5) (537 SE2d 345) (2000). In the landlord-tenant context, if the landlord owes no legal duty to the tenant, the landlord likewise owes no duty to members of the tenant's family. See *Commerce Properties v. Linthicum*, 209 Ga. App. 853, 855 (2) (434 SE2d 769) (1993). See also *Golf Club Co. v. Rothstein*, 97 Ga. App. 128, 130 (1) (102 SE2d 654) (1958), aff'd, *Rothstein v. Golf Club Co.*, 214 Ga. 187 (104 SE2d 83) (1958) ("Members of a tenant's family[ ] . . . stand in his shoes, and are controlled by the rules governing the tenant as to the right of recovery for injuries arising from failure to keep the premises in repair.") (citation and punctuation omitted). Whether a legal duty exists is a question of law. *Jordan*, 263 Ga. at 27 (1).

The trial court correctly ruled that Green Growth owed no legal duty to Boyd under the circumstances of this case. It is true that where, as here, the landlord "has retained control over common areas of an apartment complex to which tenants and others are allowed access," the landlord has a legal duty under OCGA § 51-3-1 to exercise ordinary care in keeping the common areas safe.[1] *Lidster v. Jones*, 176 Ga. App. 392, 393 (336 SE2d 287) (1985). But

[t]he true ground of liability is the landowner's superior knowledge of the perilous condition and the danger there-

---

[1] OCGA § 51-3-1 provides:

Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

from to persons coming upon the property. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted.

(Punctuation and footnote omitted.) *Sotomayor v. TAMA I, LLC*, 274 Ga. App. 323, 327 (1) (617 SE2d 606) (2005) (physical precedent only). Given this requirement of superior knowledge, we have repeatedly held that a landlord is not liable to the tenant or the tenant's family for injuries resulting from a patent defect which existed at the time the lease was executed and of which both the landlord and tenant knew or had equal opportunity to know.[2] See *O'Connell v. Historic Investments of the South*, 265 Ga. App. 262, 265 (2) (593 SE2d 731) (2004); *Linthicum*, 209 Ga. App. at 854 (2); *Roth v. Wu*, 199 Ga. App. 665, 666 (1) (405 SE2d 741) (1991); *Maxwell Bros. of Athens, Inc. v. Deupree Co.*, 129 Ga. App. 254, 256 (2) (199 SE2d 403) (1973); *Bazemore v. Burnet*, 117 Ga. App. 849, 851 (161 SE2d 924) (1968); *Golf Club Co.*, 97 Ga. App. at 131-133 (1). "A latent defect is one which could not have been discovered by inspection. A patent defect is a defect which could be discovered by inspection." (Citation and punctuation omitted.) *O'Connell*, 265 Ga. App. at 266 (2).

In light of these principles, we held in *Golf Club Co.*, 97 Ga. App. at 131-133 (1), that a landlord had no duty to erect a fence or barrier around the backyard area of an apartment complex to protect children while playing, given the landlord's lack of superior knowledge of this alleged defect. We emphasized that

[i]f lack of fencing, or lack of a guard to direct the children's play, should constitute a defect in the premises, it was one which must have been apparent at the time the rental agreement was entered into. The [child's] father had equal means with the [landlord] of looking at the back yard and ascertaining that no fence, guardrails or supervised play area existed, and, having accepted the premises and entered thereon, could not thereafter claim that the [landlord] was negligent in failing to provide him with these things.

Id. at 131 (1).

---

[2] Exceptions to this rule are where the landlord agreed to repair the hazardous defect as an inducement to the tenant to lease the premises, see *Carter v. Brannon*, 122 Ga. App. 812, 812-813 (1) (178 SE2d 755) (1970); where the defect violates a specific statute or administrative regulation, see *Bastien v. Metropolitan Park Lake Assoc.*, 209 Ga. App. 881, 882 (434 SE2d 736) (1993); or where the lease agreement places a duty to repair the defect upon the landlord, see *O'Connell v. Historic Investments of the South*, 265 Ga. App. 262, 265 (2) (593 SE2d 731) (2004). See also 3 Ga. Jur. Property § 28:69. Boyd's parents do not contend that any of these exceptions apply here.

Likewise, we held in *Roth*, 199 Ga. App. at 665-667 (1) and (3), that a landlord had no duty to install speed bumps, establish marked crosswalks, or erect speed limit signs or warnings that children were at play in the driveway of the apartment complex, again because of the landlord's lack of superior knowledge of this alleged defect in the premises. We noted that the "conditions of the exterior premises at the complex [had] been open and obvious" at the time the tenant entered into the lease "as well as before that date." (Punctuation omitted.) Id. at 666-667 (3). As such, we held that the landlord could not be held liable for the injuries sustained by the child of a tenant who had been struck by an automobile while crossing the driveway. See id.

We reached a similar conclusion in *Linthicum*, 209 Ga. App. at 853-855 (2), a case in which a child playing in the parking lot of an apartment complex was struck and injured by an automobile. We pointed out that "[t]he alleged defective situation rendering the parking lot unsafe was the absence of sufficient speed barriers and warning signs[, but] that the situation was no different when the parents moved into the complex." Id. at 854 (2). Accordingly, we held that "the knowledge of the owner could not be superior" to that of the tenants, and that there had been no breach of a legally cognizable duty. Id. at 854-855 (2).

The present case is controlled by *Golf Club Co.*, *Roth*, and *Linthicum*. If lack of a separation or buffer between where the children played in the parking lot and the vehicular traffic on the premises constituted a defect,[3] it was an open and obvious defect that existed at the time Boyd's parents executed their lease. Hence, the alleged defect was a patent one of which both Green Growth and Boyd's parents had equal knowledge or equal means of knowing, such that no legally cognizable duty was owed by Green Growth to correct the alleged defect.

Boyd's parents argue that cases such as *Golf Club Co.*, *Roth*, and *Linthicum* are distinguishable because the construction workers did not begin using the parking lot as a cut-through to the church's

---

[3] In *Savannah &c. R. Co. v. Beavers*, 113 Ga. 398, 404 (39 SE 82) (1901), we noted: When a child wakes up in the morning in his father's house, the duty of providing a safe playground for him during the day rests upon his parents. Is this duty shifted from the parent to private landowners because the child chances to escape from the parent's care? If those who brought the child into the world are unable, by reason of poverty, to provide him a playground, this may afford an argument for the passage of a statute imposing that duty upon the municipality, in which case each landowner would have to contribute his proportion of the expense. But this is quite another thing from assessing upon a single unfortunate landowner the entire damage arising from the want of such a playground. (Citations and punctuation omitted.)

property until *after* the parents entered into their lease. Hence, the parents maintain that the defective condition in the parking lot arose during the term of the tenancy, such that Green Growth became subject to the duty imposed by law to repair and correct the defect. See *Davis v. Gen. Gas Corp.*, 106 Ga. App. 317, 322 (2) (126 SE2d 820) (1962), superceded in part by statute as stated in *State v. Ponce*, 279 Ga. 651, n. 1 (619 SE2d 682) (2005); *Williams v. Jones*, 26 Ga. App. 558 (1) (106 SE 616) (1921). We are unpersuaded.

It was open and obvious at the inception of the lease that the parking lot did not have a separation or buffer zone, and, as the uncontroverted record demonstrates, it was open and obvious at the inception of the lease that vehicles entered and exited the parking lot. The fact that during the course of the tenancy additional vehicular traffic began using the parking lot did not change the fact that Boyd's parents had equal knowledge from the beginning that vehicles would enter and exit the parking area and that those vehicles could pose a danger to young children allowed to play in that area. Cf. *Pritchett v. Hartwell Entertainment Group*, 221 Ga. App. 708, 709 (472 SE2d 512) (1996) (plaintiff who stepped onto racetrack he knew was muddy had equal knowledge of alleged defective condition of track as a matter of law, despite his argument that "he was unaware of the *extent* of the muddy track's slipperiness") (emphasis in original); *First Pacific Mgmt. Corp. v. O'Brien*, 184 Ga. App. 277, 281 (361 SE2d 261) (1987) ("One cannot admit knowledge of the presence of a mine field but claim ignorance because he was not aware that a mine was placed at the point he decided to enter it.").

For these combined reasons, the trial court correctly concluded that Green Growth did not owe a legal duty to Boyd since it lacked superior knowledge of the alleged hazardous condition of the parking lot. See *Linthicum*, 209 Ga. App. at 853-855 (2); *Roth*, 199 Ga. App. at 665-666 (1), 666-667 (3); *Golf Club Co.*, 97 Ga. App. at 130-133 (1). The grant of summary judgment in favor of Green Growth, therefore, was appropriate.

*Judgment affirmed. Senior Appellate Judge G. Alan Blackburn concurs. Barnes, P. J., concurs specially.*

BARNES, Presiding Judge, concurring specially.

While I agree with the result reached in this case, I do not agree with all that is said. Therefore, this opinion decides only the issues in this case and may not be cited as binding precedent.[4]

---

[4] Court of Appeals Rule 33 (a).

YALE LAW LIBRARY

The landowner has a "legal duty" to exercise ordinary care to keep its premises and approaches safe for invitees, and that duty is continuous. OCGA § 51-3-1.[5] This duty to exercise ordinary care extends to keeping the common areas of an apartment complex safe. *Lidster v. Jones*, 176 Ga. App. 392 (336 SE2d 287) (1985). In this case, traffic through the apartment complex parking lot where children played to a construction site next door was an obviously dangerous condition, and allowing it to continue violated the landowner's duty to keep the premises safe. But the final requirement for establishing the landowner's liability is establishing that its knowledge of the dangerous condition was superior to the tenants' knowledge. *Roth v. Wu*, 199 Ga. App. 665, 666 (1) (405 SE2d 741) (1991), and this the tenants in this case could not show.

The defendant landowner argues that it did not owe a "legal duty" to the minor child who was killed by a car driving through the complex parking lot to get to the property next door, because the premises contained no defective condition. The car that caused the child's death, asserts the landowner, was not part of the premises, and thus its presence was not a defective condition of the property which triggered any duty on the landowner's part. This argument misconstrues the basis of the plaintiffs' claim and the landowner's liability. The basis for the claim was that the landowner violated his duty to keep the premises safe for his invitees by allowing construction traffic to proceed through the parking lot to the property next door.

Thus, the issue was not whether the landowner had a duty in the first place, but whether he breached his duty to keep the premises safe by allowing a perilous condition to continue, of which his knowledge was superior to that of the tenants. *Roth v. Wu*, supra at 666. While we have previously framed the issue as "whether the landowner had a duty" to undertake some action as a result of a dangerous condition, this issue follows the premise that the landowner has a duty to keep the premises safe in the first place. See, e.g., *Sotomayor v. TAMA I, LLC*, 274 Ga. App. 323, 326 (1) (617 SE2d 606) (2005) (physical precedent only) (expert's testimony created no genuine issue as to whether landowner had duty to install bumper stops in apartment parking lot); *Commerce Properties v. Linthicum*, 209 Ga. App. 853, 854 (2) (434 SE2d 769) (1993) (landowner has no duty to warn against obvious or patent dangers, such as absence of sufficient speed barriers and warning signs).

---

[5] In holding that the existence of a legal duty was a question of law, the Supreme Court of Georgia considered whether a municipality and police chief were entitled to sovereign immunity. *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993). Similarly, in this case the landowner's duty to invitees is a legal question, although the issue of liability for violating that duty is not necessarily a question of law.

Assuming that the existence of the construction traffic through the apartment parking lot was a defect, it was a patent one, of which the landowner did not have superior knowledge. The plaintiff mother herself said she was concerned about the traffic and had not allowed the child to play in the parking lot until late afternoon, when the construction crews were usually gone. Because "[t]he true ground of liability is the landowner's superior knowledge of the perilous condition and the danger therefrom to persons coming upon the property," the trial court did not err in granting summary judgment to the landowner in this case. (Punctuation omitted.) *Commerce Properties v. Linthicum*, supra at 854 (2).

Accordingly, even though I do not concur fully with the majority opinion, I concur with its judgment affirming the trial court.

DECIDED JULY 9, 2010 — ▆▆▆▆▆▆▆▆▆

*Noble L. Boykin, Jr.*, for appellants.
*Freeman, Mathis & Gary, Sun S. Choy, Jacob E. Daly, Brennan, Harris & Rominger, Mason White*, for appellee.

