**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 17, 2014**

# In the Court of Appeals of Georgia

A14A1015. KAHN et al. v. BRITT, JR. et al.

A14A1016. NEIMARK v. KAHN et al.

A14A1017. BRITT, JR. et al. v. KAHN et al.

MILLER, Judge.

These consolidated appeals arise out of the transfer of assets from Roger F. Kahn to RK Trust, of which Kahn is the lifetime beneficiary. Kahn's judgment creditors filed suit against Kahn and RK Trust, alleging, in part, that the asset transfers constituted a fraudulent conveyance. RK Trust settled the suit and sold a cattle ranch to fund the settlement. Thereafter, Kahn, in his individual capacity, and RK Trust's trustees (collectively, the "Kahn Plantiffs") sued Daniel Lamar Britt, Jr., Britt & Associates, Cort A. Neimark, and Myles Eastwood, the attorneys who represented RK Trust in the settlement, and William W. Gwaltney, another attorney

and a former co-trustee, claiming professional negligence, breach of fiduciary duty, simple negligence, conversion, trespass, wrongful eviction, and aiding and abetting.[1]

The parties filed cross-motions for summary judgment. The trial court granted summary judgment to the defendants in part and denied it in part, ruling that there were genuine issues of material fact as to the negligence and breach of fiduciary duty claims against Britt and Neimark and the conversion claim against Britt & Associates. These cross-appeals ensued.

In Case No. A14A1015, the Kahn Plaintiffs contend that the trial court erred in granting summary judgment to the defendants on their negligence claims against Britt and Neimark regarding the appointment of Gwaltney as a temporary co-trustee; the breach of fiduciary duty and negligence claims against Eastwood; the breach of fiduciary duty claims against Gwaltney; and Kahn's individual claims against Neimark; the claims regarding conversion, trespass and wrongful eviction, and aiding and abetting; and the claims for punitive damages and attorney fees. The Kahn Plaintiffs further contend that the trial court erred in denying their partial motion for summary judgment on claims that Gwaltney breached his fiduciary duty to RK Trust

[1] James Union was also named as a defendant in the suit, but the claim against him was stayed because he filed for bankruptcy. Union is not a party to these appeals.

2

and that Britt and Neimark committed legal malpractice and breached their fiduciary duties to the trust.

In Case No. A14A1016, Neimark contends that the trial court erred in denying his motion for summary judgment on claims of professional and simple negligence and breach of fiduciary duty arising out of his role in the asset transfer.

In Case No. A14A1017, Britt and Britt & Associates contend that the trial court erred in denying their motion for summary judgment on negligence and breach of fiduciary duty claims against Britt and the conversion claim against Britt & Associates.

For the reasons that follow, we affirm in part and reverse in part the trial court's judgment in Case No. A14A1015. We affirm the trial court's denial of Neimark's motion for summary judgment in Case No. A14A1016 and affirm the trial court's denial of the motion for summary judgment filed by Britt and Britt & Associates in Case No. A14A1017.

The evidence shows that Kahn's mother set up RK Trust in 1979, designating Kahn as the primary lifetime beneficiary and as one of the two trustees. The RK Trust contained a spendthrift provision that protected the income and corpus of the trust

3

from the claims of creditors, but provided the trustees with the discretion to make payments to the beneficiaries' creditors.

From 1998 to 2002, Kahn received approximately $36 million from RK Trust. Of that amount, only about $4.8 million constituted required beneficiary distributions, while the rest of the distributions were, according to Kahn, loans authorized by him and co-trustee Elliot Cohen. Kahn used these loans to purchase a cattle ranch in Bartow County (the "Cattle Ranch") and to twice run for political office. The Cattle Ranch was held by Kahn Cattle Company, LLC, of which Kahn was the sole member.

Around 2002, Cohen informed Kahn that the lack of documentation for the loans would subject Kahn to significant estate tax liability. Upon Cohen's suggestion, Kahn executed approximately 20 unsecured and backdated promissory notes in favor of RK Trust. The promissory notes either had one-year terms or were payable on demand.

By 2004, the promissory notes had not been paid off, and Cohen devised a plan to transfer all of Kahn's personal assets to RK Trust to partially satisfy Kahn's debts to RK Trust. Kahn did not approve the plan and no transfers were made at this time.

In June 2005, Kahn's niece, Cathy McSweeney, and her children (the "McSweeney Children") filed suit against Kahn for fraud, civil conspiracy, breach of

4

fiduciary duty, unjust enrichment, and conversion in connection with his acquisition of McSweeney's interest in a land investment. See *McSweeney v. Kahn*, 347 Fed. Appx. 437, 439 (11th Cir. 2009) ("*McSweeney*"). By September 2006, Cohen had resigned as co-trustee of RK Trust, and James Union was appointed to succeed him.

In December 2006, Kahn contacted Britt seeking legal representation for RK Trust because the *McSweeney* plaintiffs were investigating Kahn's debt to RK Trust. Britt understood that Kahn wanted to protect the trust's assets and Kahn's assets from the *McSweeney* plaintiffs. Britt proposed several options to Kahn and Union, and Kahn ultimately agreed that the trust should call the promissory notes due and demand the transfer of his assets to satisfy his indebtedness .

Thereafter, to avoid the appearance of self-dealing, Kahn appointed Gwaltney co-trustee in his place on an interim basis while *McSweeney* was pending. Around this time, Neimark was also hired to represent RK Trust. Union and Gwaltney, as co-trustees, then informed Kahn that RK Trust was calling his loans due and asked that he make arrangements to satisfy his debt by payment or by transferring his assets.

On April 4, 2007, Kahn and the co-trustees executed a repayment agreement, which acknowledged that Kahn owed RK Trust $36,800,560 and listed some of Kahn's assets that were to be conveyed to RK Trust in satisfaction of the promissory

5

notes. Among the assets that would be transferred was the Kahn Cattle Company. The parties stipulated that the cattle company had land holdings worth $18.8 million, however there is no evidence that anyone had the land appraised. To effectuate the asset transfers, Neimark prepared a blanket assignment dated April 4, 2007, and Kahn assigned his interest in Kahn Cattle Company to RK Trust.

In August 2008, the jury returned a verdict in *McSweeney*, finding Kahn liable to the McSweeney Children in the amount of $3,527,605. See *McSweeney*, supra, 347 Fed. Appx. at 439-440.[2] When the judgment remained unpaid, the McSweeney Children filed an action in federal court ("*Schleta*") against Kahn, the Kahn Cattle Company, and Gwaltney and Union, as co-trustees of RK Trust, claiming that they fraudulently transferred assets into the trust in order to prevent the plaintiffs from collecting on their judgment. Gwaltney and Union hired Eastwood as additional counsel to assist Britt in the defense of RK Trust, and Neimark, although not counsel of record in *Schleta*, was apprised of the proceedings in that case.

In August 2010, the *Schelta* parties participated in a court-ordered mediation, resulting in a proposed settlement. In exchange for a release of all claims against RK

---

[2] Kahn appealed this decision to the Eleventh Circuit Court of Appeals, which affirmed the jury's verdict. Id. at 440.

Trust and the trustees, as well as Kahn and Kahn's children and grandchildren, RK Trust agreed to pay the *Schleta* plaintiffs $4 million plus potential late payment fees, with the settlement payment to be funded by the auction of part or all of the Cattle Ranch.

Following a hearing on the settlement agreement and after receiving testimony as to the value of the Cattle Ranch and the proposed auction, the federal district court approved the settlement over Kahn's objections in October 2010. Because of his objections to the manner in which the sale of the Cattle Ranch was to be conducted, Kahn was not a signatory to the agreement, although all claims against him were released by the *Schleta* plaintiffs. The auction of the Cattle Ranch took place on October 27, 2010. The Cattle Ranch and Kahn Cattle Company's personal property located on the ranch, including fixtures, farm equipment, vehicles, and farm inventory, were sold for $6.5 million. Thereafter, RK Trust paid the *Schleta* plaintiffs and netted $1.219 million from the sale of the ranch. Gwaltney and Union subsequently resigned as trustees and filed a final accounting of the trust. Shortly thereafter, Kahn and the new trustees of RK Trust initiated this suit.

*Case No. A14A1015*

7

On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. (Citation omitted.) *Golden Atlanta Site Dev. v. Nahai*, 299 Ga. App. 646, 649 (2) (683 SE2d 166) (2009). With these principles in mind, we turn to the Kahn Plaintiffs' contentions.

1. The Kahn Plaintiffs contend that the trial court erred in granting summary judgment to Britt and Neimark on professional and simple negligence claims relating to Gwaltney's initial appointment as temporary co-trustee, because the trust instrument did not allow such appointments. We disagree.

"In construing trusts as well as other instruments the appellate courts must interpret the language to effectuate the intent of the settlor within the guidelines of the law." (Citation and punctuation omitted.) *Ferst v. Ferst*, 208 Ga. App. 846, 847 (432 SE2d 227) (1993). Here, Section 2.1 of the RK Trust instrument provides that each co-trustee shall, while serving as trustee, "have the power to designate successor Trustees (other than the Grantor) with respect to his trusteeship." Consequently, the trust instrument allowed Kahn, as a co-trustee, to designate Gwaltney as his successor

8

trustee, and nothing precluded Kahn from doing so on a temporary basis. Therefore, the trial court did not err in granting summary judgment to Britt and Neimark as to the Kahn Plaintiffs' claims related to Gwaltney's temporary appointment.

2. The Kahn Plaintiffs also contend that Eastwood breached his fiduciary duty to Kahn and RK Trust and committed professional negligence by failing to inquire into Gwaltney's authority to act as co-trustee, failing to notify Kahn of the terms of the *Schleta* settlement agreement or the terms of the sale, and authorizing the sale of the Cattle Ranch below fair market value. We disagree.

(a) Since we conclude below in Division 3 (c) that Kahn ratified Gwaltney's authority to act as co-trustee in his place following *McSweeney*, there was no harm in Eastwood's purported failure to inquire into Gwaltney's authority. Accordingly, these claims based on Eastwood's omissions fail.

(b) As for Eastwood's failure to notify Kahn of the terms of the settlement agreement, the evidence belies this claim. The undisputed evidence shows that Kahn's personal attorney was involved in the settlement negotiations and was aware of the settlement terms. It is well settled that notice to an attorney is notice to the client employing him, and that knowledge of an attorney is knowledge of his client. See *Roylston v. Bank of America, N.A.*, 290 Ga. App. 556, 560 (1) (b) (660 SE2d 412)

9

(2008). Moreover, Kahn made specific objections to the settlement agreement before the same was approved by the federal district court. Consequently, Kahn was aware of the settlement terms, and Eastwood was entitled to summary judgment on this claim.

(c) With respect to the sale of the Cattle Ranch, the undisputed evidence shows that Kahn did not object to the sale of the Cattle Ranch as part of the *Schleta* settlement. Instead, Kahn objected only to the manner in which the ranch was sold.[3]

Gwaltney hired the company that marketed the property and conducted the auction. At the auction, a bid of $5.5 million was received, but the trustees – Gwaltney and Union – did not feel comfortable accepting this amount. When neither Kahn nor Eastwood could be reached for further direction, the trustees negotiated with the bidder to sell the ranch and Kahn Cattle Company's personal property for $6.5 million. Eastwood testified that he was not present at the auction, and there is no evidence to show that he otherwise participated in negotiating the sale of the

---

[3] Kahn objected to certain terms of the *Schelta* settlement agreement, including terms regarding late payment fees, the period of time in which to sell the property, RK Trust's obligation to accept increasingly low offers for the property, and the requirement that RK Trust deed the property to the *Schleta* plaintiffs in the event the property could not be sold. Kahn argued that these terms were unfavorable to him and the remainder beneficiaries because the value of the property was at least $8 million.

10

Cattle Ranch. Consequently, Eastwood was entitled to summary judgment on claims that he breached a fiduciary duty or committed professional negligence in the sale of the ranch.

3. The Kahn Plaintiffs also contend that the trial court erred in granting summary judgment to Gwaltney on the claims that Gwaltney breached his fiduciary duty to Kahn and RK Trust. We agree in part.

"A violation by the trustee of any duty that the trustee owes the beneficiary shall be a breach of trust." OCGA § 53-12-300. Establishing a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. *Nalley v. Langdale*, 319 Ga. App. 354, 364 (2) (734 SE2d 908) (2012).

(a) *Verifying Promissory Notes.*

The Kahn Plaintiffs assert that Gwaltney breached his duty to RK Trust because he failed to investigate the legitimacy of the promissory notes executed by Kahn. There was no dispute that Kahn executed the notes, that he did so in order to document the $36 million in loans that he received from the trust, and that these notes remained outstanding at the time of Gwaltney's appointment. Since there was no

11

dispute that Kahn owed money to RK Trust, it cannot be said that Gwaltney breached his fiduciary duty to the trust by failing to determine the legitimacy of the notes.

(b) *Asset Transfer*.

The Kahn Plaintiffs also assert that Gwaltney breached his fiduciary duty because he "rubber-stamped" Britt's and Neimark's decision to transfer Kahn's assets to RK Trust to satisfy his indebtedness during the pendency of *McSweeney*. The Kahn Plaintiffs also contend that the trial court erred in concluding that Gwaltney was shielded from liability for his participation in the asset transfer by virtue of the trust instrument.

In granting summary judgment to Gwaltney on the fiduciary duty claim, the trial court ruled that Gwaltney was entitled to rely on Section 8.5 of the trust instrument, which limited a trustee's liability to instances of "wilfull default, wrongdoing, or gross negligence, but not for honest errors of judgment," because there was "no evidence giving rise to even an inference that Gwaltney acted in anything other than good faith[.]"

"[G]ross negligence has been defined as equivalent to the failure to exercise even a slight degree of care or lack of the diligence that even careless men are accustomed to exercise." (Citations and punctuation omitted.) *Heard v. City of Villa*

12

*Rica*, 306 Ga. App. 291, 294 (1) (701 SE2d 915) (2010). Generally, it is for the jury to decide whether the evidence supports a finding of gross negligence. *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 709 (2) (a) (618 SE2d 621) (2005).

In this case, the evidence shows that, prior to assuming the trustee appointment, Gwaltney reviewed the trust instrument and the balance sheets for RK Trust and Kahn, but he did not independently verify whether the balance sheets were correct. When Kahn transferred his assets to RK Trust, Gwaltney did not substantiate the value of Kahn's assets prior to the asset transfer, and the asset transfers were poorly documented. Since an expert witness testified that Gwaltney had an independent duty as a trustee to verify, document, and substantiate the transfers being made, including appraising the value of the property, there is a question of fact as to whether Gwaltney exercised even a slight degree of care in conducting the asset transfers, and the trial court erred in concluding that Gwaltney was entitled to protection under Section 8.5 of the trust instrument.

Nevertheless, we may affirm the trial court's grant of summary judgment if it is right for any reason, whether stated or unstated, so long as the legal basis was fairly presented in the court below. See *Ga.-Pacific, LLC v. Fields*, 293 Ga. 499, 504 (2)

13

(748 SE2d 407) (2013); *Bailey v. Hall*, 267 Ga. App. 222, 223, n.1 (599 SE2d 226) (2004). In this case, Gwaltney argued below that the document appointing him as interim trustee also shielded him from liability. That document provides, in pertinent part, that RK Trust and its beneficiaries, including Kahn, waived and released Gwaltney from "*any claim or other liability* . . . from any act or failure to act with regard to payment, collection, satisfaction, or security for those notes or obligations payable to the RK Trust previously approved by prior trustees." (Emphasis supplied.)[4] Pursuant to the delegation instrument, Kahn waived any claim against Gwaltney for acts relating to the asset transfer to RK Trust. See *Heiman*, supra, 300 Ga. App. at 881-882 (1). Accordingly, the trial court did not err in granting summary judgment to Gwaltney on claims related to the asset transfer.

(c) *Remaining as co-trustee beyond term of appointment*.

---

[4] While former OCGA § 53-12-194 (a) provided that "[n]o provision in a trust instrument is effective to relieve the trustee of liability for breach of trust committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary[,]" the document delegating Gwaltney as co-trustee is not a trust instrument. See *Heiman v. Mayfield*, 300 Ga. App. 879, 881-882 (1) (686 SE2d 284) (2009) (release and indemnification agreement between former trustee and beneficiary was not a trust instrument because it was executed long after creation of trust and reflected only the intentions of the beneficiaries and former trustee).

14

The Kahn Plaintiffs next argue that Gwaltney breached his fiduciary duty by remaining as co-trustee beyond the term of his interim appointment, which was to last through the pendency of *McSweeney*. Gwaltney responds that Kahn accepted the benefits of Gwaltney's service through the receipt of trust distributions and represented that Gwaltney was a trustee in court documents, thus ratifying Gwaltney remaining as a co-trustee past his interim term.

It is undisputed that Kahn temporarily delegated his authority to Gwaltney to serve as trustee and that the term of the delegation was for the pendency of *McSweeney*. It is also undisputed that a document making Gwaltney a permanent trustee was prepared but never signed by Kahn. Nevertheless, there is uncontroverted evidence that Kahn asked Gwaltney to remain as co-trustee and Kahn continued to treat Gwaltney as a co-trustee thereafter. Additionally, following *McSweeney*, and during the pendency of *Schleta*, Kahn specifically requested and accepted distributions from RK Trust that were authorized by Gwaltney. Although Kahn objected to the terms of the *Schleta* settlement reached by Gwaltney and asked that Gwaltney resign as co-trustee,[5] Kahn never claimed that Gwaltney was acting without

---

[5] Kahn asked Gwaltney to resign when Gwaltney refused to dismiss Britt as counsel for RK Trust.

authority. Moreover, even after the sale of the farm, Kahn requested that Gwaltney distribute some of the sale proceeds for his benefit. In sum, there is no evidence that Kahn ever repudiated Gwaltney's authority to act as co-trustee following *McSweeney*.

If, after knowledge of what the agent has done, the principal makes no objection within a reasonable time, a ratification results by operation of law. *A & S Group, Inc. v. Murray*, 291 Ga. App. 331, 334 (1) (661 SE2d 701) (2008). Likewise, a beneficiary may also ratify a trustee's unauthorized act constituting a breach of trust, and such ratification bars the beneficiary from subsequently repudiating the breach and attempting to hold the trustee liable. See *Nalley*, supra, 319 Ga. App. at 366 (2). Although the question of whether an unreasonable period of time has passed so as to result in ratification is usually an issue for the jury, where there is no evidence showing that a party's actions did not constitute ratification, such a determination can be made as a matter of law. See *Hendrix v. First Bank of Savannah*, 195 Ga. App. 510, 512 (394 SE2d 134) (1990). In this case, since Kahn continued to represent Gwaltney as a co-trustee and accepted the benefits of Gwaltney's role as co-trustee, Kahn ratified any breach by Gwaltney when he remained as co-trustee beyond the designated term. Consequently, Gwaltney was entitled to summary judgment on this issue.

16

(d) *Retaining and failing to supervise Britt and Eastwood during the Schleta litigation.*

The Kahn Plaintiffs also argue that the trial court erred in concluding that Gwaltney did not breach his fiduciary duty by hiring Britt and Eastwood to represent RK Trust in the *Schleta* action. We agree.

As a preliminary matter, the Kahn Plaintiffs argued below only that Gwaltney breached his fiduciary duty by hiring Britt. Consequently, they may not now argue that Gwaltney breached his fiduciary duty by hiring Eastwood. See *Locke's Graphic & Vinyl Signs v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007) ("An argument not raised in the trial court is waived and cannot be raised for the first time on appeal.") (footnote omitted).

As to the hiring of Britt, there is evidence that Kahn transferred his assets to RK Trust pursuant to Britt's advice, and this asset transfer gave rise to the *Schleta* suit, as the *Schleta* plaintiffs alleged that the asset transfers constituted a fraudulent conveyance. Contrary to the trial court's holding that the Kahn Plaintiffs could not establish proximate cause because Eastwood also served as counsel in *Schleta*, the evidence shows that Britt was actively involved in developing the defense strategy. In light of this evidence, there is a question of fact as to whether Gwaltney's

17

hiring of Britt to represent RK Trust in *Schelta* was a breach of his fiduciary duty and whether any breach caused RK Trust to suffer damages. Accordingly, the trial court erred in granting summary judgment to Gwaltney on this claim.

(e) *Auction of the Cattle Ranch*.

The Kahn Plaintiffs next argue that there are questions of fact regarding whether Gwaltney breached his fiduciary duty by selling the property in the manner he did. Again, we agree.

A trustee has a duty to sell a trust's property for the highest price possible. See *Bloodworth v. Bloodworth*, 260 Ga. App. 466, 471 (1) (579 SE2d 858) (2003). The issue is whether Gwaltney proximately caused the cattle ranch to be sold for less than the highest price possible. As a general rule, a determination as to proximate cause is a jury issue, but in plain and undisputed cases the issue is one of law for the court. *McAuley v. Wills*, 251 Ga. 3, 7 (5) (303 SE2d 258) (1983). This is not a plain and undisputed case.

Although Kahn ratified Gwaltney remaining as co-trustee, he objected to the manner in which the Cattle Ranch was sold, and there is evidence that Gwaltney may have breached his duty in this respect. Notably, Gwaltney believed that a quick sale

18

would force the trust to sell at a lower price, but nonetheless authorized the auction, which was advertised for only seven weeks. Additionally, Gwaltney failed to appraise the property prior to the sale. Although Gwaltney rejected a prior offer because he believed the property was worth more than $6.45 million, and the property's fair market value was at least $8 million, the property sold at auction for only $6.5 million. Moreover, as discussed below, the price received at auction, after paying two commissions, was actually lower than the price RK Trust would have received had it accepted a pre-auction offer to sell the Cattle Ranch for $6.45 million.

Under these circumstances, there is a question of fact as to whether Gwaltney breached his fiduciary duty in authorizing the sale of the Cattle Ranch in the manner in which he did, resulting in the ranch being sold for less than fair market value. Cf. *Cartersville Developers, LLC v. Ga. Bank & Trust*, 292 Ga. App. 375, 377 (664 SE2d 783) (2008) ("True market value is the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so.") (citation and punctuation omitted). Consequently, the trial court erred in granting summary judgment to Gwaltney on fiduciary duty claims related to the sale of the Cattle Ranch.

(f) *Brock commission*.

The evidence shows that prior to June 2010, agent Gary Brock had approached the Rollins Family about purchasing the Cattle Ranch. In June 2010, Brock approached Gwaltney with an offer to buy the ranch on behalf of the Rollins family, operating through LOR, Inc. Around this time, Gwaltney discovered that the Rollins family had been looking at the property for several years. When the parties were unable to reach an agreement on the sale price, Gwaltney decided to proceed with the auction instead and invited Brock to participate. At auction, the Rollins Family, operating as LOR Apple Valley, LLC and represented by Thorne Winter, bought the Cattle Ranch.

After the auction, but prior to closing, Gwaltney became aware that Brock was claiming that he was entitled to a commission on the sale of the Cattle Ranch. Gwaltney testified that he had not previously considered whether Brock would be entitled to a commission. Gwaltney proceeded with the closing of the sale after Britt advised him that Brock was not entitled to a commission, Gwaltney placed the disputed funds into the court's registry, and Gwaltney eventually settled Brock's claim of $320,000 for $270,000.

In this case, although a different entity (LOR Apple Valley, LLC) bought the Cattle Ranch than the entity that previously submitted an offer through Brock (LOR,

20

Inc.), both entities were controlled by the Rollins family. Kahn testified that Brock had an exclusive contract to sell the property to the Rollins family and Gwaltney proceeded to the auction without ensuring that Brock's exclusive contract was cancelled. Additionally, Gwaltney admitted that he did not investigate whether Brock would be entitled to a commission prior to proceeding with the auction. Since a trustee has a duty to act in the utmost good faith in protecting and maximizing the assets of the estate, see *Jonas v. Jonas*, 280 Ga. App. 155, 160 (3) (b) (633 S2d 544) (2006) and RK Trust had to pay commissions to both the auction company and to Brock, there is a question of fact as to whether Gwaltney breached his fiduciary trust with respect to his handling of Brock's commission. See *Lee v. SunTrust Bank*, 314 Ga. App. 63 (722 SE2d 884) (2012) (to defeat a summary judgment motion, the nonmoving party need not present conclusive proof but must only produce or point to specific evidence, even slight, giving rise to a triable issue of material fact). Therefore, the trial court erred in granting summary judgment to Gwaltney on the issue of Brock's commission.

4. The Kahn Plaintiffs next contend that the trial court erred in granting summary judgment to Neimark on all claims brought by Kahn individually, because

21

there is a genuine issue of fact as to whether Neimark represented Kahn personally

in connection with the asset transfer. We agree.

> Generally, a plaintiff must demonstrate the existence of an attorney-client relationship before he may recover in a legal malpractice suit. This is essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence. The basic question in regard to the formation of the attorney-client relationship is *whether the evidence sufficiently established that advice or assistance of the attorney is both sought and received in matters pertinent to his profession*.

(Citations and punctuation omitted; emphasis supplied.) *Rhone v. Bolden*, 270 Ga.

App. 712, 716 (4) (a) (608 SE2d 22) (2004).

Here, the undisputed evidence shows that Neimark was hired to represent RK

Trust and assist with the transfer of assets from Kahn to the trust. Kahn testified that

Neimark advised him that the asset transfer was for *Kahn's own* protection as well as

the protection of RK Trust. Consequently, there is an issue of fact as to the existence

of an individual attorney-client relationship between Kahn and Neimark.

Moreover, even if no express attorney-client relationship existed, "an attorney

may be liable for negligence under the theory of voluntary agent when the attorney

gratuitously undertakes to perform a legal service (or, in this case, give legal advice)

22

to another with the other's approval." (Citation omitted.) *Rogers v. Hurt, Richardson, Garner, Todd & Cadenhead*, 203 Ga. App. 412, 415 (2) (417 SE2d 29) (1992). Thus,

> liability for professional acts extends not only to the actual client but also to third parties who rely upon the professional's advice in situations where the professional was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

(Citation and punctuation omitted.) Id. at 416 (2). In this case, given Neimark's role in the asset transfers from Kahn to RK Trust, it can hardly be said that Kahn was not a forseeable person who would rely upon Neimark's advice. Id. (holding that the plaintiffs had standing to sue for damages allegedly sustained as a result of corporate attorney's advice to transfer assets from the corporation to the plaintiffs).

Neimark argues that Kahn cannot establish damages because the *Schleta* plaintiffs would have been able to force the sale of the Cattle Ranch even absent the transfer of the property to RK Trust. The evidence, however, shows that *Schleta* was filed by the victorious *McSweeney* plaintiffs not only to recover the unpaid judgment of approximately $3.5 million owed by Kahn, but also to challenge the alleged fraudulent conveyance of assets from Kahn to RK Trust. If Kahn can show, as he alleges, that he was sued as a result of following Neimark's legal advice, then the cost

23

of defending the fraud claims brought by the *Schleta* plaintiffs would be an element of Kahn's damages. See *Rogers*, supra, 203 Ga. App. at 416 (2). Consequently, Neimark was not entitled to summary judgment on claims brought by Kahn individually.

5. The Kahn Plaintiffs also contend that the trial court erred in granting summary judgment to the defendants on their claims that the defendants aided and abetted each other in their respective breaches of duty to RK Trust when proceeding with the *Schleta* settlement and selling the Cattle Ranch at auction. We disagree.

> In Georgia, the tort of aiding and abetting a breach of fiduciary duty requires proof of the following elements: (1) through improper action or wrongful conduct and *without privilege*, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Footnote omitted; emphasis supplied.) *White v. Shamrock Bldg. Sys., Inc.*, 294 Ga. App. 340, 343 (1) (669 SE2d 168) (2008). An act is done with "malice" if it is an unauthorized interference or an interference without legal justification or excuse. See *Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 25 (1) (a), n.13 (633 SE2d 373) (2006).

24

The tort of aiding and abetting requires proof of virtually the same elements as the tort of tortious interference with business relations. See *White*, supra, 294 Ga. App. at 345 (3).

> [I]n order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract. In other words, all part[ies] to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships.

(Citations omitted.) *Atlanta Mkt. Center Mgmt. Co. v. McLane*, 269 Ga. 604, 610 (2) (503 SE2d 278) (1998). Moreover, a person has acted "without privilege" with regard to tortious interference when he is a stranger to the business relationship at issue. *See Cox v. City of Atlanta*, 266 Ga. App. 329, 332 (1) (596 SE2d 785) (2004).

Here, during the relevant period, Neimark, Britt, and Eastwood served as RK Trust's attorneys and Gwaltney served as a co-trustee. As discussed above in Division 3 (c), Kahn ratified Gwaltney's service as co-trustee beyond his designated term. During the course of *Schleta*, Neimark, Britt, and Eastwood all took direction from Gwaltney and Union. Consequently, regardless of whether the individual defendants committed any tort with respect to the trust when proceeding with the *Schleta* settlement or in selling the Cattle Ranch, the defendants cannot be said to have acted "without privilege" because they were not strangers to RK Trust. See *Cox*, supra, 266

25

Ga. App. at 333 (1) (since the defendants were not strangers to the business relationship at issue, they were entitled to summary judgment on tortious interference claim); *Atlanta Mkt. Center Mgmt.*, supra, 269 Ga. at 610 (2) (affirming grant of summary judgment on tortious interference claim against person involved in "business relationship giving rise to and underpinning the contract"). Since the tort of aiding and abetting requires that a defendant act "without privilege," and this was not the case here, the trial court properly granted summary judgment to the defendants on this count.

6. Kahn contends that the trial court erred in granting summary judgment to Gwaltney, Britt, Eastwood, and Britt & Associates on his claim for conversion. We agree, in part.

> [C]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation.

(Citations and punctuation omitted.) *Williams v. Nat. Auto Sales, Inc.*, 287 Ga. App. 283, 285 (1) (651 SE2d 194) (2007). Where a defendant comes into possession of property lawfully, the plaintiff can establish conversion by showing that the defendant refused to return the plaintiff's property after the plaintiff demanded its return. Id.

26

Where a defendant comes into the possession of the property unlawfully, the plaintiff can establish conversion by showing that the defendant disposed of the property without authority and retained the proceeds. Id. at 286 (1).

(a) *Kahn's personal property*.

Viewing the evidence in Kahn's favor, the evidence shows that after the auction, Kahn's assistant attempted to remove some of Kahn's property, but Eastwood prevented her from taking all of it. Gwaltney testified that he and Union subsequently placed personal items they believed belonged to Kahn in a storage unit and gave the keys to the unit to Kahn's attorney. Kahn submitted evidence that, after visiting the storage unit, it was determined that some of his personal items from the Cattle Ranch were still missing.

Given that Eastwood exercised control over Kahn's property by preventing Kahn's assistant from removing it and Gwaltney admitted to packing up Kahn's items, there is a genuine issue of material fact as to whether Gwaltney and Eastwood possessed Kahn's personal items that are missing. Consequently, Gwaltney and Eastwood were not entitled to summary judgment on Kahn's conversion claim with regard to Kahn's personal property.

27

As to Britt, there is no evidence that Britt possessed or exercised control over Kahn's personal property, and thus he was entitled to summary judgment on the conversion claim.

(b) *The Cattle Ranch.*

The Kahn Plaintiffs assert that, since Gwaltney was no longer a valid trustee at the time, the sale of the Cattle Ranch was unauthorized and amounted to conversion. To the extent the Kahn Plaintiffs seek the recovery of real property, that claim must fail because an action for conversion will not lie to recover real property. See *Levenson v. Word*, 294 Ga. App. 104, 105 (1), n.2 (668 SE2d 763) (2008).

As for the personal property on the Cattle Ranch belonging to Kahn Cattle Company, such as farm equipment, vehicles, and farm inventory, the Kahn Plaintiffs did not raise this claim below. Therefore, they are precluded from raising this claim on appeal. See *Locke's Graphic & Vinyl Signs*, supra, 285 Ga. App. at 828 (2) (a).

7. Kahn contends that the trial court erred in granting summary judgment to Gwaltney, Britt, and Eastwood on his claim for trespass and wrongful eviction for entering the Cattle Ranch and excluding him from the property. Specifically, Kahn argues that the trial court erred in concluding the evidence did not support a landlord-tenant relationship even though RK Trust allowed Kahn to stay at the Cattle Ranch,

28

because Kahn stayed at the property for no more than ten days in 2010, he maintained a separate residence, and he did not have a lease agreement. We agree that factual questions remain as to this issue.

Under OCGA § 44-7-1 (a), a landlord-tenant relationship is created when "the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time *or at the will of the grantor*." (Emphasis supplied.) There is no dispute that Kahn had been allowed to stay at the Cattle Ranch periodically without having to pay rent and without a formal lease agreement and kept personal property there. Although the defendants argue that Kahn's failure to pay rent precluded the existence of a landlord-tenant relationship, "neither a written lease agreement nor the payment of rent is required for a landlord-tenant relationship to exist." (Footnote omitted.) *McCullough v. Reyes*, 287 Ga. App. 483, 486 (1) (651 SE2d 810) (2007); see also *May v. May*, 165 Ga. App. 461, 462 (1) (300 SE2d 215) (1983) ("The payment of rent is not essential to the creation of a tenancy at will.") (citation and punctuation omitted). Therefore, a genuine issue of material fact remains as to whether Kahn was a tenant at will of RK Trust and, as a result, whether the defendants were liable for not following the dispossessory procedures. See *Ikomoni v. Executive Asset Mgmt., LLC*, 309 Ga. App.

81, 84 (2) (709 SE2d 282) (2011) ("If the landlord evicts a tenant without filing a dispossessory action and obtaining a writ of possession, or without following the dispossessory procedures for handling the tenant's personal property, the landlord can be held liable for wrongful eviction and trespass."). Consequently, the trial court erred in granting summary judgment to Gwaltney, Britt, and Eastwood on Kahn's wrongful eviction and trespass claim.

8. The Kahn Plaintiffs next contend that the trial court erred in granting summary judgment to the defendants on their claims for punitive damages and attorney fees. We agree in part.

OCGA § 13-6-11 authorizes a jury to award plaintiffs the expenses of litigation "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff[s] unnecessary trouble and expense[.]" Ordinarily, it is for the jury to determine the existence of bad faith or stubborn litigiousness, and "only in the rare case where there was absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues." (Punctuation and footnote omitted.) *Brito v. Gomez Law Group, LLC*, 289 Ga. App. 625, 628 (2) (658 SE2d 178) (2008).

To support an award of punitive damages, there must be clear and convincing evidence that the defendant's actions showed "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). "A breach of fiduciary duties is sufficient to support an award of punitive damages. Whether punitive damages should be awarded for a breach of fiduciary duties is ordinarily a question for the jury." (Citation omitted.) *Home Ins. Co. v. Wynn*, 229 Ga. App. 220, 223 (2) (493 SE2d 622) (1997). Conversion and wrongful eviction and trespass can also support an award of punitive damages. See *Felker v. Chipley*, 246 Ga. App. 296, 298 (2) (540 SE2d 285) (2000) (conversion); *Swift Loan & Finance Co. v. Duncan*, 195 Ga. App. 556, 557-558 (2), (5) (394 SE2d 356) (1990) (trespass based on wrongful eviction); *Real Estate Loan Co. v. Pugh*, 47 Ga. App. 443 (1) (170 SE 698) (1933) (wrongful eviction).

As set forth above, we have held that genuine issues of material fact remain as to some of the breach of fiduciary claims made against Gwaltney; the conversion claims asserted against Gwaltney, Eastwood, and Britt & Associates; and the wrongful eviction and trespass claims against Gwaltney, Britt, and Eastwood. Since the trial court erred in granting summary judgment on several of the Kahn Plaintiff's

substantive claims, the trial court likewise erred in granting summary judgment on their derivative claims for attorney fees and punitive damages. See *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 181 (6) (733 SE2d 457) (2012).

9. The Kahn Plaintiffs also contend that the trial court erred in failing to grant their motion for partial summary judgment because the undisputed facts show that Gwaltney breached a fiduciary duty by remaining as co-trustee following the conclusion of *McSweeney*; Britt and Neimark were negligent for taking direction from Gwaltney after his trustee term expired; and Britt, Neimark, and Eastwood breached their fiduciary duties to RK Trust by taking direction from Gwaltney. We disagree.

As noted above in Division 3 (c), Gwaltney was entitled to summary judgment on the Kahn Plaintiffs' claim that he breached his fiduciary duty by remaining as co-trustee because such actions were ratified. For similar reasons, Britt and Neimark are entitled to summary judgment on claims that they were negligent for taking direction from Gwaltney. Accordingly, the Kahn Plaintiffs were not entitled to summary judgment on these claims.

Likewise, the Kahn Plaintiffs were not entitled to summary judgment on claims against Gwaltney for hiring of Britt to handle the *Schelta* suit, the auction of the Cattle Ranch, and the handling of Brock's commission because, as discussed above

32

in Division 3, genuine issues of material fact remain. Moreover, for the reasons stated below, there are questions of fact as to whether Britt and Neimark committed legal malpractice or breached their fiduciary duties to RK Trust. Therefore, we affirm the trial court's denial of summary judgment to the Kahn Plaintiffs.

### Case No. A14A1016

10. Neimark contends that the trial court erred in denying his motion for summary judgment on the Kahn Plaintiffs' claims for negligence, professional negligence, and breach of fiduciary duty relating to Neimark's role in the transfer of Kahn's assets to RK Trust. Specifically, Neimark argues that RK Trust failed to establish proximate cause because the RK Trust's spendthrift provision was subject to attack based on improper distributions to Kahn predating Neimark's involvement with RK Trust.[6] We disagree.

> To prevail on a legal malpractice claim, a client must prove that (1) he employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) this failure was the proximate cause of damages to the client. To establish proximate cause, the client must show that but for the attorney's error, the outcome would

---

[6] Neimark provides no argument nor citation to authority as to whether his actions were negligent, and therefore he has abandoned such argument for purposes of this appeal. See Court of Appeals Rule 25 (c) (2). Neimark's arguments with respect to duties owed to Kahn personally have been decided in Kahn's favor in Division 4 above.

33

have been different . . . . The defendant attorney is entitled to summary judgment if he shows that there is an absence of proof adduced by the client on the issue of proximate cause.

(Footnote omitted.) *Millsaps v. Kaufold*, 288 Ga. App. 44, 44-45 (653 SE2d 344) (2007). It is well settled that proximate cause is generally an issue for the jury, and there may be more than one proximate cause of an injury. *Keith v. Beard*, 219 Ga. App. 190, 193 (464 SE2d 633) (1995).

The evidence shows that from 1998 to 2002, Kahn made more than $31 million in unauthorized trust distributions to himself. Neimark argues that, regardless of any action on his part, the *McSweeney* plaintiffs would have been able to defeat the spendthrift provision of RK Trust because of the improper distributions to Kahn. In support of his argument, Neimark relies upon Restatement (Third) of Trusts § 58, cmt. b (1) (2003), which pertinently provides:

> [a]n intended spendthrift restraint is also invalid with respect to a nonsettlor's interests in trust property over which the beneficiary has the equivalent of ownership, entitling the beneficiary to demand immediate distribution of the property. *Thus, if an income beneficiary also holds a presently exercisable general power of appointment (that is, a power currently to compel distribution of trust property to the power holder)*, a spendthrift restraint will not prevent the beneficiary's creditors or transferees from reaching the property that is subject to the power.

(emphasis added).

34

In this case, however, by the time *Schleta* was filed, Kahn no longer had the power to compel distribution of the trust property since he had delegated his appointment to Gwaltney. Therefore, Neimark's reliance upon the Restatement is unavailing. Moreover, although *Schleta* was filed primarily to recover the unpaid *McSweeney* judgment of approximately $3.5 million owed by Kahn, the *Schleta* plaintiffs also sought treble damages for the fraudulent conveyance of assets and RICO violations based on such transfers. Neimark helped execute the asset transfers, which experts testified was done poorly. Since the *Schleta* settlement was approximately $4 million, more than Kahn's personal obligation under *McSweeney*, and RK Trust incurred damages by having to litigate *Schleta*, there is a genuine issue of material fact as to whether Neimark's actions proximately caused injuries to RK Trust. Therefore, the trial court properly denied Neimark's motion for summary judgment on RK Trust's claims for negligence, professional negligence, and breach of fiduciary duty. Since these claims survived summary judgment, the trial court also erred in granting Neimark summary judgment on the Kahn Plaintiffs' related claims for attorney fees and punitive damages. See *Racette*, supra, 318 Ga. App. at 181 (6).

### Case No. A14A1017

11. Britt and his law firm, Britt & Associates, contend that the trial court erred in denying their motion for summary judgment on the Kahn Plaintiffs' negligence and

35

breach of fiduciary duty claims for not properly advising Kahn and RK Trust about the risks of the asset transfer and poorly managing the transfer. We disagree.

There is conflicting evidence as to whether Britt properly advised Kahn, as co-trustee, regarding the risks associated with asset transfer. Britt testified that, upon being hired to represent RK Trust, Kahn and Union rejected his advice to either file a declaratory judgment and have a court place the assets from the loan proceeds into a constructive trust or, alternatively, execute deeds to secure debt so that RK Trust had a security interest in the properties Kahn purchased with RK Trust money. Kahn did not deny having received Britt's proposals, but testified that he only agreed to the asset transfer because Britt threatened to sue Kahn on behalf of the trust if he did not proceed with this option. Contrary to Britt's arguments, the above conflicts in the evidence preclude summary judgment on the issue of whether Britt was negligent in advising RK Trust and Kahn regarding the asset transfers. See *Rogers*, supra, 203 Ga. App. at 416 (2) (attorney's liability extended to persons who would foreseeably rely on attorney's advice regarding asset transfer).

Like Neimark, Britt argues that RK Trust cannot establish proximate cause, but we have rejected these arguments above. In light of these conflicts in the evidence, along with the evidence showing that the asset transfer was poorly executed, Britt was

not entitled to summary judgment on the Kahn Plaintiffs' claims that he was negligent and breached a fiduciary duty.

12. Britt contends that the trial court erred in failing to grant summary judgment to Britt & Associates on Kahn's conversion claim. We disagree because the there is some evidence showing that that an employee of Britt's law firm may have removed identified boxes of Kahn's personal files from the Cattle Ranch. Therefore, the trial court correctly denied summary judgment to Britt & Associates on the conversion claim with respect to Kahn's personal property.

In sum, in Case A14A1015, we affirm the trial court's rulings that: Britt and Neimark were entitled to summary judgment on the claim that they were negligent in allowing Gwaltney to become a temporary co-trustee; Eastwood was entitled to summary judgment as to negligence and breach of fiduciary duty claims; Gwaltney was entitled to summary judgment on negligence and breach of fiduciary duty claims related to verifying Kahn's promissory notes, his role in the asset transfer, and his actions in remaining as co-trustee beyond the designated term; all of the defendants were entitled to summary judgment on the aiding and abetting claims; and Britt was entitled to summary judgment on the conversion claim. We also affirm the denial of the Kahn Plaintiffs' motion for summary judgment. We reverse the trial court's grant

of summary judgment to Gwaltney on negligence and breach of fiduciary claims relating to the hiring of Britt to represent RK Trust in *Schleta*, selling the Cattle Ranch at auction, and handling Brock's commission; Neimark on claims brought by Kahn individually; Gwaltney and Eastwood regarding the conversion of Kahn's personal property; and Gwaltney, Eastwood, and Britt on Kahn's claims for trespass and wrongful eviction. Additionally, we reverse the trial court's rulings on the Kahn Plaintiffs' request for attorney fees and punitive damages to the extent the substantive claims on which they are based survive.

In Case A14A1016, we affirm the denial of summary judgment to Neimark on claims that he was negligent and breached his fiduciary duty to RK Trust with respect to the asset transfer. In Case A14A1017, we affirm the denial of summary judgment to Britt on negligence and breach of fiduciary duty claims regarding the asset transfer, and affirm the denial of summary judgment to Britt & Associates on the conversion claim.

*Judgment affirmed in part and reversed in part in Case A14A1015; judgment affirmed in Case A14A1016; judgment affirmed in A14A1017. Doyle, P. J., and Dillard, J., concur.*