### 34648. GARNER *v.* LAMARR.

CARLISLE, J. 1. Where the plastering of a bedroom ceiling in rented premises is filled with numerous small, lengthy cracks and because of this condition, when taken in connection with the fact that the plastering is of inferior quality, being too brittle and lacking the proper tensile strength so that the keys between the laths of the ceiling will hold the weight of the plastering and there is nothing under the plastering to support it, the ceiling is dangerous, and, while the cracks are patent and obvious, the dangerous condition of the ceiling is not perfectly patent and obvious—it cannot be said as a matter of law that tenants who continue to use the bedroom with knowledge of the cracks but without knowledge of the dangerous condition of the ceiling, and who are injured by the falling of the plastering, are guilty of negligence proximately causing the injuries. *Wolbe* v. *Jossey*, 42 *Ga. App.* 612 (157

S. E. 233); *Crook* v. *Foster,* 142 *Ga.* 715 (83 S. E. 670); *Miller* v. *Jones,* 31 *Ga. App.* 318 (120 S. E. 672); *Johnson* v. *Collins,* 98 *Ga.* 271 (26 S. E. 744); *Dessau* v. *Achord,* 50 *Ga. App.* 426 (178 S. E. 396), and cit.

2. "When the landlord is notified that the premises are out of repair, it becomes his duty to inspect and investigate in order that he may make such repairs as the safety of the tenant requires." ·*Stack* v. *Harris,* 111 *Ga.* 149, 151 (36 S. E. 615); *McGee* v. *Hardacre,* 27 *Ga. App.* 106 (3, 4) (107 S. E. 563); *Turner* v. *Dempsey,* 36 *Ga. App.* 44 (135 S. E. 220); *Cassidy* v. *Cullens,* 36 *Ga. App.* 469 (137 S. E. 130). And this must be done within a reasonable time. *Wolbe* v. *Jossey,* supra.

3. And where facts such as those indicated in division 1 of this opinion are alleged to exist, in an action by the tenant against the landlord for personal injuries, and it is further alleged that the plaintiff tenant rented the premises on January 19, 1952, and beginning in February, 1952, the plaintiff's wife directly notified the defendant landlord that the ceiling was in need of repair, and on each occasion the defendant promised to make the necessary repairs, and these notices were repeated up to and including a notice on March 11, 1952, and still the defendant failed to make any repairs, and, on March 25, 1952, at about 6:30 a. m., while the plaintiff and his wife were still asleep, the ceiling fell causing enumerated injuries to them, and it is alleged that the landlord could, in the exercise of ordinary care, have discovered the dangerous condition of the ceiling by inspection after notice, and that he had had a reasonable time within which to inspect and repair the ceiling—a petition containing these allegations is not subject to general demurrer, and the trial court did not err in so ruling.

4. The petition alleges that the relationship of landlord and tenant existed between the plaintiff and the defendant, and the fact that bedroom and bath were rented furnished in a building containing other rooms and the term was on a week-to-week basis does not affirmatively show that such relationship did not exist, so as to change the duty owed by the defendant to the plaintiff from that of landlord to tenant to that of innkeeper to guest. The relationship of landlord and tenant may be for any length of time fixed by agreement. Code § 61-101.

5. None of the special demurrers is meritorious or worthy of discussion.
*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*

DECIDED JUNE 11, 1953.

*Robert B. Pullen,* for plaintiff in error.

*Frank A. Bowers,* contra.

Louis LaMarr brought an action for damages against James D. Garner, and in his petition alleged substantially the following facts: (2) On or about January 19, 1952, the plaintiff rented a bedroom and bath from the defendant as a home for himself and his wife. The contract, which was oral, provided for a tenancy on a week-to-week basis at a rental of $25 per week.

(3) At all times in question the defendant was the landlord of the premises wherein the bedroom and bath were located. (4) The bedroom and bath were rented to the plaintiff furnished. (5) After taking possession of the bedroom and bath on or about February, 1952, the plaintiff and his wife noticed that the ceiling of the bedroom contained small, lengthy cracks, but such defective condition was not apparently dangerous at the time or thereafter until the plastering of the ceiling fell, as will be set out hereinafter. (6) Commencing in the month of February, 1952, and until March 11, 1952, the plaintiff's wife from time to time directly notified the defendant orally that the plastering of the ceiling of the bedroom was in need of repair, and on each of those occasions the defendant promised the plaintiff's wife that necessary repairs would be made. (7) Specifically on or about March 11, 1952, between 6:00 p. m. and 6:30 p. m., in Garner's Tea Room, located in the same building in which the bedroom and bath were located, the plaintiff directly notified the defendant orally that the ceiling of the bedroom was in need of repairs on account of the small cracks, and that, since the plaintiff and his wife were going out of town for a few days, it would be a good time to make such repairs to the ceiling as might be needed. The defendant then and there promised the plaintiff that he would make the repairs to the ceiling. (8) Thereafter the defendant failed to make any repairs to the ceiling, and on the morning of March 25, 1952, about 6:30 a. m., while the plaintiff and his wife were asleep on the bed in the room, a large, heavy section of the ceiling plaster, measuring approximately nine and one-half feet by seven and one-half feet, fell suddenly from the ceiling, severely injuring the plaintiff and his wife. (9) The overhead ceiling was not properly supported, in that there was nothing under the plaster to hold it up and the plaster was of an inferior quality, being too brittle, and not having the proper tensile strength so that the keys between the laths would hold the weight of the plaster, all of which facts were unknown to the plaintiff and his wife at and before the time of their injuries, and if these facts were unknown to the defendant, he could have discovered them by the exercise of ordinary care after notice of the cracks. The defendant had a reasonable time from the time of the notice of the cracks in which to have inspected

and repaired the ceiling before it fell, and he could have discovered the dangerous condition of the ceiling if he had made an inspection of it after notice that it was in need of repair. (10) At the time the ceiling fell the plaintiff and his wife were asleep and in the exercise of ordinary care could not have avoided their injuries. (11) The plaintiff's wife suffered severe and painful cuts and bruises to her head and face. Her right breast was severely bruised and remained discolored for several months. After being struck by the plastering, the plaintiff's wife stood up momentarily but fell forward on her face and lapsed into unconsciousness for hours thereafter. An ambulance was called from Grady Memorial Hospital, and the plaintiff's wife was taken to that hospital where first aid was administered and she was transferred, still unconscious, to Crawford Long Hospital and placed under the care of a named physician. Her injuries have since caused her excruciating pain and suffering, making her highly nervous, and causing her many sleepless nights from shock and injury. The injuries to her right breast are of a permanent nature. (12) As a result of her injuries, it was necessary to hospitalize the plaintiff's wife for six days, and she has been under the care of her physician through July 25, 1952. (13) At the time of the injuries, the plaintiff's wife was 22 years of age and in perfect health. As a result of the injuries to her, the plaintiff lost his wife's consortium and services for a period of four months. (14) As a result of her injuries, the plaintiff incurred hospital bills in the amount of $87.75 and doctor's bills in the amount of $335. (15) The plaintiff suffered severe cuts, lacerations, and bruises to his left foot about the ankle, and severe cuts, lacerations, and sprains to his right hand about the wrist. These injuries were extremely painful to the plaintiff for two months, and his right wrist has since become weak and the injuries to his right hand have permanently disabled his right hand and wrist by 20 percent. (16) The defendant was negligent in the following particulars: (a) in failing to repair the ceiling after notice of its defective condition; (b) in allowing the plaster to be on the ceiling without being properly supported; (c) in allowing inferior quality of plastering matter to be in the ceiling; (d) in allowing plastering of insufficient tensile strength to be in the ceiling. (17) These acts of negligence were the direct and proximate cause of the injuries to the plaintiff and

his wife. Wherefore the plaintiff prays for process and judgment against the defendant in the sum of $10,000 and the costs of this suit.

The trial court overruled every ground of the defendant's general and special demurrers, and he assigns error upon that judgment.