**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 7, 2022**

# In the Court of Appeals of Georgia

A21A1263. EFFICIENCY LODGE, INC. v. NEASON et al.

MILLER, Presiding Judge.

This case requires us to analyze the intersection between Georgia's Innkeeper laws and its landlord-tenant laws. Efficiency Lodge, Inc. seeks review of the trial court's order entering a permanent injunction preventing it from evicting Armetrius Neason and Lynetrice Preston without filing proper dispossessory actions against them, and it also seeks review of the trial court's order denying its motion for judgment on the pleadings in this action brought by Neason, Preston, and a former resident, Altonese Weaver. On appeal, Efficiency Lodge argues that it is an "innkeeper" that is entitled to evict its residents without formal dispossessory proceedings. Under the specific facts of this case, we conclude that the trial court

correctly ruled that Efficiency Lodge was precluded from summarily evicting the tenants without initiating dispossessory proceedings, and so we affirm.

> A permanent injunction is proper in clear and urgent cases to prevent a party from being damaged and left without an adequate legal remedy, and we review a trial court's grant of a permanent injunction for a manifest abuse of discretion. We review issues of law de novo, applying the "plain legal error" standard of review. In contrast, with respect to factual issues we construe the evidence in favor of the trial court's findings and affirm if there is any evidence to support them, regardless of whether the evidence would also support opposite findings.

(Citations and punctuation omitted.) *Harris v. Southern Christian Leadership Conference, Inc.*, 313 Ga. App. 363 (721 SE2d 906) (2011). Additionally,

> [o]n appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action or defense. For purposes of the motion, all well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts.

> However, where, as in this case, the party moving for judgment on the pleadings does not introduce affidavits, depositions, or interrogatories

2

in support of its motion, such motion is the equivalent of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The motion to dismiss should not be granted unless the averments in the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of its claim. We review a trial court's ruling on a motion to dismiss de novo.

(Citations omitted.) *City of Albany v. GA HY Imports, LLC*, 348 Ga. App. 885, 887 (825 SE2d 385) (2019). "[I]t is [not] necessary for a complaint to set forth all of the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." (Citations and punctuation omitted.) *Scott v. Scott*, 311 Ga. App. 726, 729 (1) (716 SE2d 809) (2011).

According to the parties' pleadings,[1] the plaintiffs are all current or former long-term residents of Efficiency Lodge, which operates an extended-stay motel. Efficiency Lodge specifically caters to low-income residents of DeKalb County, and it advertises itself as a place where people can "Stay a Nite or Stay Forever."

---

[1] Efficiency Lodge stipulated to the facts as alleged in the plaintiff's complaint.

3

Efficiency Lodge is required pursuant to OCGA § 48-8-2 to pay an innkeeper tax for the first 90 days of a person's stay, but it stops paying the tax after the 90-day period. As a result, Efficiency Lodge has not paid the innkeeper tax for any of the plaintiffs since the first 90 days of each of their residencies. Nevertheless, each agreement between Efficiency Lodge and a resident contains a clause stating, "The relationship of Innkeeper and Guest shall apply and not the relationship of landlord and tenant."

Neason began living at the Efficiency Lodge in February 2016 and has lived there continuously since that time, a period of over five years. Neason considers the Efficiency Lodge as his home, and he keeps his personal belongings in his room. Neason currently pays $204 in rent on a weekly basis. During the COVID-19 pandemic, Neason sustained an injury that prevented him from working, and he fell six or seven weeks behind on his rent payments, but he has since made an effort to pay his rent every week.

Preston has continuously lived in the Efficiency Lodge for nearly two years, and her two minor children and grandson, for whom she is the primary caregiver, also live with her. Like Neason, Preston also considers Efficiency Lodge to be her home, and she pays $204 in rent on a weekly basis. Due to the COVID-19 pandemic, however, Preston lost her job in March 2020 and fell behind on her rent when her

4

unemployment benefits ended. Preston has made an effort to pay the rent that she owes, and so far she has paid approximately $850 in outstanding rent to Efficiency Lodge.

Weaver had lived continuously in the Efficiency Lodge for nearly a year, and she considered Efficiency Lodge to be her home. Weaver was summarily evicted in July 2020 after she fell behind on her rent payments in Spring 2020. Weaver regularly made payments in an attempt to pay back what she owed, including at least one rent payment made approximately a week before Efficiency Lodge locked her out of her room.

When each of the Plaintiffs fell behind on their rent payments, Efficiency Lodge made contradictory statements to them about its ability to evict themwithout dispossessory proceedings. Specifically, when Preston fell behind in her payments, Efficiency Lodge attached a letter to her door notifying her of her past due payments and stating, "Those guest[s] who have been with us for over 90 days may [no longer] be a 'guest,' you may be 'tenants at will.' This means we may have to go through the courts to evict you for non-payment." However, Efficiency Lodge employees also threatened to lock the Plaintiffs out of their respective rooms if they did not pay the balance of the rent owed.

The Plaintiffs filed the instant complaint, which (1) sought injunctive relief to prevent Efficiency Lodge from summarily evicting Neason and Preston; (2) raised a claim of trespass for locking Weaver out of her room; and (3) raised a claim for interference with their quiet enjoyment of the property. The Plaintiffs primarily alleged that Efficiency Lodge could not evict them summarily but was instead required to initiate dispossessory proceedings as provided for in OCGA § 44-7-49, et seq. The Plaintiffs filed a motion for a temporary restraining order or an interlocutory injunction, and Efficiency Lodge filed a cross-motion for judgment on the pleadings. Following a hearing, the trial court denied the motion for judgment on the pleadings and granted a permanent injunction enjoining Efficiency Lodge from evicting the Plaintiffs without pursuing dispossessory proceedings. This appeal followed.

1. Efficiency Lodge's primary contention is that because it is an innkeeper and the Plaintiffs are guests, it is not required to follow the standard dispossessory process to evict the plaintiffs. Specifically, Efficiency Lodge relies on its contract with the Plaintiffs and argues that a contractual provision established conclusively that it is an innkeeper and is therefore entitled to summarily evict the Plaintiffs. After a close review of the relevant contract, we are compelled to disagree.

6

The construction of [a] contract is, of course, a question of law for the court that involves three steps: The first step is to decide whether the language of the contract is clear and unambiguous. If so, the contract is enforced according to its plain terms, and the contract alone is looked to for meaning. Second, if the language of the contract is ambiguous in some respect, the rules of contract construction must be applied by the court to resolve the ambiguity. And finally, if ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. Suffice it to say, the cardinal rule of contract construction is to ascertain the intention of the parties, as set out in the language of the contract.

(Citations and punctuation omitted.) *Shields v. RDM, LLC*, 355 Ga. App. 409, 413 (1) (844 SE2d 297) (2020); see also *Langley v. MP Spring Lake, LLC*, 307 Ga. 321, 325-326 (834 SE2d 800) (2019) (looking to the language of the contract to establish the intent of the parties in regards to the nature of the relationship they created).

Under Georgia law, a landlord-tenant relationship is established where "the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor." OCGA § 44-7-1 (a). Georgia law does not specify a minimum length of time needed for such a relationship to form, nor does it require any formal

7

designation that the relationship is such, as "neither a written lease nor the payment of rent is required for a landlord-tenant relationship to exist." *McCullough v. Reyes*, 287 Ga. App. 483, 486 (1) (651 SE2d 810) (2007); see, e.g., *Kahn v. Britt*, 330 Ga. App. 377, 391-392 (7) (765 SE2d 446) (2014) (a landlord-tenant relationship potentially existed where the plaintiff only lived on the property for a short period of time but kept personal property with them even though no lease was signed, no rent was paid, and the plaintiff only lived on the ranch for 10 days). A landlord may only evict a tenant "through a properly instituted dispossessory action filed pursuant to [OCGA § 44-7-50]." *Steed v. Fed. Nat. Mortg. Corp*, 301 Ga. App. 801, 805 (689 SE2d 843) (2009). The landlord must utilize the court process, "even if the tenant is holding over beyond his term, is in arrears in his rent, and has received legal notice to vacate." *Swift Loan and Finance Co. v. Duncan*, 195 Ga. App. 556, 557 (1) (394 SE2d 356) (1990). "Whether a landlord-tenant relationship exists is a question of fact." *Williams v. State*, 261 Ga. App. 511, 513 (1) (583 SE2d 172) (2003).

(a) We first conclude that the agreements between Efficiency Lodge and the plaintiffs are ambiguous regarding the exact nature of their relationship and whether it contemplates that the parties must go through formal dispossessory proceedings to effect an eviction. Although the contracts contain an explicit clause stating, "The

relationship of Innkeeper and Guest shall apply and not the relationship of landlord and tenant," the contract also provides that residents "shall be responsible for any and all expenses including attorney's fees and court costs incurred in the event of eviction." The language of this second provision frames the prospect of going through proceedings in court to effect an eviction as likely. By comparison, OCGA § 43-21-3.2 provides that, once an occupancy in a hotel has ended, "the guest may be restrained from entering such room and any property of the guest may be removed by the innkeeper" without the need for court proceedings. The contract thus is ambiguous as to whether the parties contemplated that formal dispossessory proceedings were necessary.

To resolve this ambiguity, several aspects counsel us to conclude that the contract provides that dispossessory proceedings are required for eviction. First, we note the general canon of contractual construction that "where there is ambiguity, the agreement will be construed against the drafter[,]" in this case Efficiency Lodge, "and in favor of the non-drafter." *Langley v. MP Spring Lake, LLC*, 307 Ga. 321, 324 (834 SE2d 800) (2019). Second,"when a provision specifically addresses the issue in question, it prevails over any conflicting general language." (Citation omitted.) *Avion Systems, Inc. v. Thompson*, 293 Ga. App. 60, 63 (2) (a) (666 SE2d 464) (2008). Thus,

9

the terms specifically referencing court proceedings surrounding eviction take precedence over the potentially conflicting general language about an innkeeper/guest relationship.

Moreover, "we must read that provision in light of the contract as a whole and in the legal context in which it was created" so as to ascertain the intent of the parties. (Citation omitted.) *Langley*, supra, 307 Ga. at 325. Georgia law defines "guest" to mean "a person who pays a fee to the keeper of an inn *for the purpose of entertainment* at that inn," and it defines "inn" to mean "all taverns, hotels, and houses of public general entertainment for guests." (Emphasis supplied.) OCGA § 43-21-1 (1)-(2). Georgia's taxation statute also defines "innkeeper," in part, as "any person subject to taxation for furnishing for value to the public any rooms, lodgings, or accommodations." OCGA § 48-13-50.2 (2) (A). And such persons are subject to taxation for "retail sales," which is defined as

> [t]he sale or charges for any room, lodging, or accommodation furnished to *transients* by any hotel, inn, tourist camp, tourist cabin, or any other place in which rooms, lodgings, or accommodations are regularly furnished to *transients* for a consideration. This tax shall not apply to rooms, lodgings, or accommodations supplied for a period of 90 continuous days or more[.]

(Emphasis added.) OCGA § 48-8-2 (31) (B).[2]

Georgia courts have previously explained that

[i]t is because inns and innkeepers have to do with the traveling public-strangers-and that for brief periods, and under circumstances which render it impossible for each customer to contract for the terms of his entertainment, that the law has taken them so strictly in charge. And it is because of the compulsion innkeepers are under, to afford entertainment to any body, that the law has clothed them with extraordinary privileges.

*Bonner v. Welborn*, 7 Ga. 296, 307 (1) (1849). In *Bonner*, the Supreme Court of Georgia concluded that the relationship between a specific person and a house of lodging was actually a landlord/tenant relationship, and not an innkeeper/guest relationship. The Court explained

Now, under this, (it is submitted,) correct legal view of innkeepers, was the plaintiff in this case, an innkeeper? Was that his business? His business was, to rent his houses to families or persons who might contract with him for their occupancy. They are not his guests; they are beyond dispute, his tenants, and he their landlord. His business was, to furnish board, lodging and attention. But to whom? To the wayfaring

_____

[2] As noted above, because the plaintiffs have stayed at Efficiency Lodge well over 90 days, Efficiency Lodge does not currently pay retail sales tax for furnishing the plaintiffs with residences.

world? No. But to persons who might resort to his healthful fountains and salubrious locality, for a season, that is, for the fall and summer months. They were not his guests for a day, or night, or week, but his lodgers or boarders for a season. They were not chargeable according to any tariff of rates, fixed by law, but according to contract, varied, beyond doubt, according to time, amount of accommodation, and other circumstances. These are not the characteristics of the business of innkeeping, but indicate a boarding house. As well might every private boarding house in the State, be adjudged an inn or a tavern, as this party's establishment.

*Bonner*, supra, 7 Ga. at 307 (1).

In *Garner v. La Marr*, 88 Ga. App. 364 (76 SE2d 721) (1964), we similarly found that certain residents of an inn were in effect tenants, and the owner of the inn was their landlord. In that case, we stated that

The fact that bedroom and bath were rented furnished in a building containing other rooms and the term was on a week-to-week basis does not affirmatively show that such relationship did not exist, so as to change the duty owed by the defendant to the plaintiff from that of landlord to tenant to that of innkeeper to guest. The relationship of landlord and tenant may be for any length of time fixed by agreement.

Id. at 364 (4).

While Efficiency Lodge offers short-term rentals to individuals who wish to stay, the record shows[3] that Efficiency also allows people, much like the plaintiffs, to stay for long, extended periods, and thus its characterization of itself as a hotel is not necessarily an accurate assessment of its legal relationship with long-term residents. In *Garner*, the residents paid for their residency on a week-to-week basis and rented a furnished room. *Garner*, supra, 88 Ga. App. at 365. This Court determined that the Plaintiffs residing in the inn were tenants, rather than guests staying at a hotel. Id. at 365. In the case before us, the Plaintiffs alleged that they resided at the Efficiency Lodge for far longer than the plaintiffs in *Garner*. With Efficiency's permission and consent, Neason has resided at Efficiency for five years, Preston for more than a year and a half, and, before she was evicted, Weaver resided at Efficiency for nearly a year.

The plaintiffs also rented mostly furnished rooms, but the plaintiffs have also brought many of their personal belongings with them and otherwise treat Efficiency Lodge as their permanent residences. See, e.g., *Kahn*, supra, 330 Ga. App. at 391 (7)

---

[3] "[W]hile parol evidence is inadmissible to add to, take from, or vary a written contract, we may consider the parol evidence presented by the parties in light of any unresolved ambiguity." (Citations and punctuation omitted.) *Shepherd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 192 (750 SE2d 463) (2013).

13

(a landlord-tenant relationship potentially existed where the plaintiff only lived on the property for a short period of time but kept personal property with them even though no lease was signed, no rent was paid, and the plaintiff only lived on the ranch for 10 days). For instance, Neason has decorated his room, added many of his furnishings, receives mail to his room, and has listed it as his address on his driver's license.

Preston paid a $50 security deposit when she moved into her room at Efficiency where she lives with her children and grandchildren. Preston's children attend school using the Efficiency address and a school bus picks them up on the street in front of Efficiency. Further, Preston and Neason have stated that they do not receive housekeeping or linen service, and Preston further stated that when she moved into her room, her bed did not have linens at all. None of these facts are consistent with the idea that Efficiency Lodge treated the plaintiffs as the transient guests of a hotel as such is understood by a reasonably common person. See *Bonner*, supra, 7 Ga. at 307 (An inn is "a house where the traveler is furnished with everything which he has occasion for, whilst on his way."). Accordingly, the trial court correctly ruled that, under the contract, Efficiency Lodge was required to initiate dispossessory proceedings to evict the plaintiffs.

(b) Moreover, even if the contract were not ambiguous, we would be constrained to conclude that we could not enforce the contractual provision purporting to define the relationship between the parties to the extent that it allowed Efficiency Lodge to evict the plaintiffs in the absence of formal dispossessory proceedings. The General Assembly has specifically provided that parties may not waive through contract the majority of the numerous rights afforded to tenants by law. OCGA § 44-7-2 (b) (4) specifically provides that "[i]n any contract, lease, license agreement, or similar agreement, oral or written, for the use or rental of real property as a dwelling place, a landlord or a tenant may not waive, assign, transfer, or otherwise avoid any of the rights, duties, *or remedies* contained in . . . [the Article] relating to [dispossessory] proceedings against tenants holding over[.]" (Emphasis supplied.) Any language in a contract that purports to waive such rights is void as a matter of law. See *Country Club Apartments v. Scott*, 246 Ga. 443, 444 (271 SE2d 841) (1980) (concluding that language in a lease that purported to waive the landlord's liability for failing to repair the property was void under OCGA § 44-7-2 (b)).

The language of OCGA § 44-7-2 (b) is notably broad - it is not necessarily limited to "leases," but extends to "any contract . . . or similar agreement" "for the use

15

or rental of real property *as a dwelling place*." (Emphasis supplied.) As noted above, the plaintiffs showed that they used their rooms at Efficiency Lodge not merely as transient guests but as their permanent dwelling places and that such use was known to, contemplated by, and consented to by Efficiency Lodge. Efficiency Lodge's attempt to construe the clause in the rental contract purporting to define the relationship between Efficiency Lodge and the plaintiffs as "innkeeper" and "guest" is thus an attempt to use the rental agreement to waive its duty to go through the formal dispossessory process and is therefore in violation of OCGA § 44-7-2 (b) (4).

Applying the canons of construction, we conclude that the contract between the plaintiffs and Efficiency Lodge does not allow Efficiency Lodge to summarily evict the plaintiffs without the formal dispossessory process.

2. Efficiency Lodge also argues that the text of Georgia's innkeeper statute establishes that the Plaintiffs were guests and Efficiency Lodge was either an "innkeeper" or an "apartment hotel" that is allowed to summarily evict residents for non-payment. We are constrained to disagree.

The Innkeeper statute provides that

(a) Whenever the keeper of a hotel, apartment hotel, boarding house, inn, or other accommodations furnished on a day-to-day or weekly basis

16

wishes to terminate the occupancy of a guest for reasons other than those described in subsection (b) of this Code section, the keeper shall give notice of such intention to the guest. The period of time to be specified in the notice as to when the occupancy will be declared terminated by the keeper shall be equal to the period of time for which occupancy is paid for by the guest and accepted by the keeper.

(b) The notice requirement of subsection (a) of this Code section shall not apply to a termination of occupancy for cause, such as failure to pay sums due, failure to abide by rules of occupancy, failure to have or maintain reservations, or other action by a guest.

OCGA § 43-21-3.1.

Efficiency Lodge argues that, aside from the language of the contract, they are nevertheless considered an "apartment hotel" under this statute and are thus entitled to evict their residents without resorting to dispossessory proceedings. But this Code section only addresses when the guest's occupancy/tenancy may be terminated – it is actually OCGA § 43-21-3.2 that allows "innkeepers" to "restrai[n guests] from entering such room" and allows "innkeepers" to "remove" "any property of the guest" once the occupancy has expired. Because OCGA § 43-21-3.2 only references "innkeepers" and not "apartment hotels," we must assume that, even if Efficiency Lodge is considered an "apartment hotel," this statute does not automatically entitle

it to forcibly and involuntarily remove residents once their occupancy has ended without resorting to formal dispossessory proceedings.[4] And because, as we concluded in Division 1, Efficiency Lodge is not necessarily an "innkeeper" for the relevant purposes of this appeal, it cannot avail itself of the other parts of the innkeeper statute.

We are mindful of many of Efficiency Lodge's well-reasoned arguments. For the reasons provided above, however, we are constrained to affirm the trial court's injunction order. We note that Efficiency Lodge is not without remedy, as it may avail itself of the standard dispossessory proceedings to remove any tenants whose occupancies have terminated.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*

---

[4] To the extent that Efficiency Lodge argues that our decision in *Lewis v. Ritz Carlton Hotel Co., LLC*, 310 Ga. App. 58, 60 (1) (712 SE2d 91) (2011), allows entities such as "apartment hotels" that are listed in OCGA § 43-21-3.1 (a) to summarily evict guests, we do not find this case applicable to the present facts. The construction of OCGA § 43-21-3.1 that we consider today was not at issue in that case because that case clearly involved a standard hotel/guest relationship. *Lewis* also did not involve facts where, based on the language of the contract, the parties may have intended for formal dispossessory proceedings to be used for evictions. Thus, *Lewis* does not provide a basis for reversal of the trial court's order.